**Charles DeWayne THORNTON, Appellant**

v.

**The STATE of Texas.**

**No. 080–03.**

Court of Criminal Appeals of Texas, En Banc.

Sept. 22, 2004.

---

Robert Ford, Fort Worth, for Appellant.

Helena F. Faulkner, Asst. Criminal Dist. Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for The State.

## OPINION

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, KEASLER, and HOLCOMB, JJ., joined.

The issue in this case is whether, as a matter of federal constitutional exclusionary rule jurisprudence, derivative evidence that is the product of an illegal arrest in another state should be suppressed in a Texas prosecution. We decide that the evidence is not suppressible in the Texas prosecution.

Appellant was charged with and convicted of burglary of a habitation with the intent to commit sexual assault (the "charged offense"). The victim of this offense testified that on November 30, 1999, she was awakened in the middle of the night in the bedroom of her apartment by a tug on her pubic hair. She saw a man who "fit appellant's silhouette" leaving the bedroom. The victim's husband woke up and saw an intruder standing in the bedroom doorway. The intruder left with a pair of the victim's panties. The police subsequently recovered these panties from appellant's mother's apartment. Neither the victim nor her husband could identify

appellant as the intruder. Through cross-examination and closing arguments, appellant suggested, among other things, that "the intruder" may have been in the victim's apartment to steal her panties and not to commit sexual assault.

To prove appellant's intent to commit sexual assault, the prosecution presented, as part of its case-in-chief under Tex. R.Evid. 404(b), evidence of a similar offense that appellant committed in Arizona in April 1995 before he moved to Texas.[1] The victim of the Arizona offense testified in the Texas prosecution that someone (whom she could not identify) broke into her apartment and sexually assaulted her. This person took a pair of the Arizona victim's panties. The Texas prosecution proved beyond a reasonable doubt that appellant committed the Arizona offense by comparing legally-obtained-in-Texas DNA samples of appellant to legally-obtained DNA samples in a rape kit that the Arizona victim had submitted soon after she was attacked.[2] This comparison evidence proved that the Arizona rape kit contained appellant's DNA.

Appellant claimed at trial, as he does here, that the Arizona extraneous offense (which appellant had been charged with in Arizona) should not have been admitted into evidence in the Texas prosecution because the Arizona extraneous offense "had been suppressed by the Arizona courts." The facts relevant to this claim show that in 1995 Arizona police were investigating a series of crimes that involved someone (known as the "midtown rapist") breaking into the homes of females, sexually assaulting them and stealing their panties.

From what we can glean from the transcript of the Arizona suppression hearing, it appears that the police had reason to conduct and were conducting surveillance of a particular apartment complex as part of their investigation of these crimes when they saw appellant walk into the complex, look around, "disappear for a few seconds, and then turn around and walk straight back out of the complex." The Arizona police arrested appellant because he "matched the general description" of "the man that they were surveilling for." The Arizona police subsequently obtained appellant's blood and DNA samples which matched the DNA samples in the Arizona victim's rape kit. At the time of the suppression hearing, the Arizona officer who arrested appellant was no longer with the force and had moved to Oregon.

Claiming at the Arizona suppression hearing that only a "Terry stop was legitimate,"[3] appellant's Arizona counsel claimed that appellant's arrest was illegal because it was not supported by probable cause. The Arizona trial court agreed and suppressed the "blood/DNA test" as the fruit of appellant's illegal arrest. Also finding that there was "no other untainted evidence upon which to proceed," the Arizona trial court "reluctantly" dismissed the

---

1. The prosecution also presented evidence of another similar offense that appellant committed in Texas on December 17, 1999. The parties' briefs address whether the trial court abused its discretion to admit this evidence and evidence of the 1995 Arizona offense under Rule 404(b) and Tex R.Evid. 403. Appellant did not raise these claims in his discretionary review petition, and we did not exercise our discretionary authority to address them. They are, therefore, not before the Court.

2. In a March 2001 search warrant affidavit seeking DNA samples from appellant, Texas authorities stated that they needed these samples for DNA testing of biological material in the Texas victim's underwear and for DNA testing of biological material in the Arizona victim's rape kit.

3. *See generally Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Arizona case. Arizona prosecutors did not have this ruling reviewed on appeal.

Based on our review of the transcript from the Arizona suppression hearing, it appears that appellant was not identified by Arizona authorities as a suspect in the Arizona cases until he was illegally arrested by the Arizona police. It also appears that Texas authorities learned of appellant's identity as the perpetrator of the Arizona offense and as a possible suspect in similar offenses being committed in Texas as a result of a tip from Arizona authorities on December 7, 1999.[4] Texas authorities arrested appellant in Texas on December 17, 1999, as he tried to escape from the balcony of an apartment where he had been seen peeking through a window by the female occupant. The police were at this location as a result of a 9–1–1 call from the female occupant of the apartment and not as a result of the tip from the Arizona authorities. This December 17, 1999, incident was the other extraneous offense that the prosecution used to prove appellant's intent in the charged offense in the Texas prosecution. *See* Footnote 1. The actual "blood/DNA" evidence that was suppressed in the Arizona case was not used at trial in the Texas prosecution. *See United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 3023–25, 3029, 49 L.Ed.2d 1046 (1976) (tainted primary evidence seized by state law enforcement officer suppressible at state and federal criminal trials).

Appellant claimed on direct appeal that the Texas prosecution "improperly used the appellant's identity that was a by product of the illegal arrest in Arizona as a basis for making the case in Texas." The Court of Appeals, however, addressed a different issue and decided that appellant's Fourth Amendment exclusionary rule objections were properly overruled because "the trial court did not admit into evidence the illegally obtained [blood/DNA evidence] from the Arizona case." *See Thornton v. State,* No. 2–01–152–CR, slip op. at 6 (Tex.App.-Fort Worth, delivered December 12, 2002). We exercised our discretionary review authority to address the question of whether the Court of Appeals erred "in approving admission of an extraneous offense that had been suppressed by the Arizona courts."[5]

■ Although the appellant's brief does not make it very clear, his claim seems to be that the evidence of the results of comparing appellant's legally-obtained-in-Texas DNA samples to the legally-obtained DNA samples in the Arizona rape kit ("comparison evidence") should have been

---

4. In a December 20, 1999, search warrant affidavit for the apartment of appellant's mother seeking evidence in the charged offense and in another extraneous offense committed on November 15, 1999, Texas authorities stated:

   On 12–7–99 your affiant had received a tip of similar circumstances from Tucson Arizona. Your affiant made contact with [Arizona] Detective Ralph Taylor. Your affiant was told that [appellant] had been handled several times for similar offenses. Detective Taylor advised that he had heard about the several offenses in [Texas] involving the unknown suspect entering apartments, and touching or looking at females. Detective Taylor told me that [appellant] liked to hide in the dark, watch women, enter the apartments and touch the victim, lick her genital area, and when she would wake up, he would laugh at her, and leave the apartment. Detective Taylor advised that [appellant] had sexually assaulted one victim in Tucson Arizona. Detective Taylor stated that [appellant] had a mother, . . . that lived in the city limits of Arlington, TX., and may have relocated.

5. It does not resolve this question or the one appellant raised in the Court of Appeals to decide, as the Court of Appeals did, that no evidence that was obtained from the illegal arrest in Arizona was admitted in appellant's trial in Texas.

suppressed because this evidence was the fruit of the authorities' knowledge of appellant's identity which was a "by product of the illegal arrest in Arizona." Appellant argues in his brief:

Contrary to Fourth Amendment doctrine, the State, in this case, improperly used [appellant's] identity that was a by product of the illegal arrest in Arizona as a basis for making the case in Texas. Again, the Arizona documentation clearly establishes that [appellant] was illegally arrested; therefore, the State of Texas is prohibited from using [appellant's] identity to resurrect this prosecution. [Citations to record omitted] In other words, the only way Arizona officers established that [appellant] was a suspect was based on an illegal arrest.

■ The United States Supreme Court's Fourth Amendment "fruit of the poisonous tree" exclusionary rule jurisprudence makes clear that not all evidence is "fruit of the poisonous tree" simply "because it would not have come to light but for the illegal actions of the police." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The "more apt question" is "whether, granting establishment of the primary illegality, the evidence . . . has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *See id.* The Supreme Court summarized its Fourth Amendment exclusionary rule jurisprudence with respect to unlawful searches/seizures in *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988):

The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, [citation omitted], and of testimony concerning knowledge acquired during an unlawful search, [citation omitted]. Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint," [citations omitted].

■ This jurisprudence also recognizes that "unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984). Because of its substantial interference with the criminal justice system's truth-finding function, the application of the exclusionary rule should be "restricted to those areas where its remedial objectives [of deterring future unlawful police conduct] are thought most efficaciously served." *See Leon*, 104 S.Ct. at 3412–13; *New York v. Harris*, 495 U.S. 14, 110 S.Ct. 1640, 1645, 109 L.Ed.2d 13 (1990) (Marshall, J., dissenting) (because deterrence is a principal purpose of the exclusionary rule, the attenuation analysis must be driven by an understanding of how extensive exclusion must be to deter Fourth Amendment violations).[6]

6. The United States Supreme Court has enumerated several exceptions to the exclusionary rule. *See INS v. Lopez–Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 3489, 82 L.Ed.2d 778 (1984) (exclusionary rule not applicable to INS civil deportation proceedings); *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 3052–53, 49 L.Ed.2d 1067 (1976) (exclusionary rule not applicable to vindicate Fourth Amendment rights in federal habeas corpus proceedings); *Janis*, 96 S.Ct. at 3035 (exclusionary rule not extended to "forbid the use in [a federal civil tax proceeding] of one sovereign of evidence seized by a criminal law enforcement agent of

Primarily because the Arizona police did not learn of appellant's identity until they illegally arrested him, it is fairly debatable whether there is a causal connection between the comparison evidence and appellant's illegal arrest in Arizona since this derivative evidence could not have been secured without this illegal arrest. *See Sossamon v. State*, 816 S.W.2d 340, 347–48 (Tex.Cr.App.1991) (crime victim's in-court identification of defendant was fruit of poisonous tree because this evidence discovered only as a result of defendant's illegal confession); *compare United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 1250–51, 63 L.Ed.2d 537 (1980) (maj.op.) [7] (witness' in-court identification not fruit of poisonous tree because witness' identity not discovered and her cooperation not secured only as a result of an unlawful search or arrest of the accused). But, deciding that there is a causal connection between the comparison evidence and appellant's illegal arrest in Arizona does not end the inquiry of whether this evidence is a suppressible fruit of that illegal arrest. *See Murray*, 108 S.Ct. at 2533 (exclusionary rule requires exclusion unless the unlawful arrest becomes "so attenuated as to dissipate the taint"); *Sossamon*, 816 S.W.2d at 349 (addressing whether attenuating factors were present to dissipate the taint of an illegal confession).

In this case, there are attenuating factors that dissipate the taint of appellant's illegal arrest from any derivative evidence that may have been obtained as a result of it. There is the passage of over four years between the illegal arrest and the acquisition of the comparison evidence in the Texas prosecution. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975) (temporal proximity between illegal arrest and voluntary confession is relevant consideration in determining whether taint of illegal arrest has been dissipated).

Also, there is the intervening circumstance of appellant's commission of similar crimes in Texas after the exclusionary rule was applied in Arizona, allowing him to escape prosecution for his crimes there, resulting in more crime victims in Texas.[8] *See Brown*, 95 S.Ct. at 2262 (presence of intervening circumstances is also relevant). The most important consideration is that Texas authorities (against whom appellant seeks application of the exclusionary rule) did not violate appellant's Fourth Amendment rights. *See Brown*, 95 S.Ct. at 2262 (purpose and flagrancy of official misconduct are also relevant considerations); *see also Leon*, 104 S.Ct. at 3412 (when police have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on guilty defendants by application of the exclusionary rule offends the basic concepts of the criminal justice system). The primary objects of the exclusionary rule in this case are the Arizona authorities who illegally arrested appellant. *Janis*, 96 S.Ct. at 3029

---

another sovereign"); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974) (exclusionary rule not applicable to grand jury proceedings); *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971) (voluntary statement that is illegally obtained in violation of prophylactic constitutional rule may be used for impeachment purposes).

**7.** *See Crews*, 100 S.Ct. at 1250–51 (Brennan, J., joined by Stewart and Stevens, JJ.) and at

1253 (Powell, J., concurring in part, joined by Blackmun, J.) and also at 1253 (White, J., concurring in the result, joined by Burger, C.J., and Rehnquist, J.).

**8.** This case, therefore, illustrates other "substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights" which has "long been a source of concern." *See Leon*, 104 S.Ct. at 3412.

(primary objects of exclusionary rule sanction are those who violate the defendant's rights)

Application of the exclusionary rule in the Texas prosecution would have "marginal or nonexistent" benefits of deterring Texas and Arizona authorities from committing Fourth Amendment violations. *See Leon*, 104 S.Ct. at 3412 (marginal or nonexistent deterrent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify substantial costs of exclusion). The remedial objectives of the exclusionary rule are most efficaciously served by having applied it to the Arizona prosecution and not by applying it to the Texas prosecution. *See Leon*, 104 S.Ct. at 3412–13 (because of its substantial interference with the criminal justice system's truth-finding function, the application of the exclusionary rule should be "restricted to those areas where its remedial objectives are thought most efficaciously served"); *Janis*, 96 S.Ct. at 3029.

Finally, appellant also appears to argue that his identity should be suppressed as a by-product of his illegal arrest in Arizona. In *Crews*, Justice Brennan's lead plurality opinion, in a case similar to this one, attempted to leave open the question of whether a defendant's "person [c]ould be considered evidence, and therefore a possible 'fruit' of police misconduct." *See*

*Crews*, 100 S.Ct. at 1252 (Brennan, J., joined by Stewart and Stevens, JJ.) (plurality op.).[9]

A majority of the Supreme Court in *Crews*, however, rejected the claim that "a defendant's face can be a suppressible fruit of an illegal arrest." *See Crews*, 100 S.Ct. at 1253 (Powell, J., concurring in part, joined by Blackmun, J.) and also at 1253 (White, J., concurring in the result, joined by Burger, C.J., and Rehnquist, J.); *see also Sossamon*, 816 S.W.2d at 348 (defendant's face may not be suppressed because of police misconduct that violated the Fourth Amendment).[10] Even if these concurring opinions (reflecting a majority view) in *Crews* cannot be considered as having rejected the claim that "a defendant's face can be a suppressible fruit of an illegal arrest," Justice Brennan's lead opinion is only a plurality opinion and cannot be considered as binding precedent.

The judgment of the Court of Appeals is affirmed.

PRICE, J., filed a concurring opinion.

WOMACK, J., filed a concurring opinion in which JOHNSON and COCHRAN, JJ., joined.

PRICE, J. concurring.

I agree with the majority that a causal connection exists between the appellant's illegal arrest in Arizona and the evidence that was admitted in Texas that showed

---

9. Justice Brennan's lead plurality opinion in *Crews* found it unnecessary to address that question because (unlike this case) the record plainly disclosed "that prior to his illegal arrest, the police both knew respondent's identity and had some basis to suspect his involvement in the very crimes with which he was charged." *See Crews*, 100 S.Ct. at 1252 (Brennan, J.) (plurality op.).

10. *See Nichols v. United States*, 511 U.S. 738, 114 S.Ct. 1921, 1926, 128 L.Ed.2d 745 (1994) (when a fragmented court decides a case and

no single rationale explaining the result enjoys the assent of five justices, the holding of the court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds); *Ex parte Smith*, 977 S.W.2d 610, 611 n. 4 (Tex. Cr.App.1998) (explaining why a concurring opinion in another case may be regarded as an opinion for this Court since it was the only opinion in that case joined by a majority of the Court).

that the appellant committed a sexual assault in Arizona. I also agree with the majority that the evidence in this case should not be suppressed because the taint of the appellant's illegal Arizona arrest was attenuated by the fact that the evidence admitted in his Texas trial was not obtained illegally by Texas authorities. I write separately because I disagree with some of the points made in the opinion.

A discussion that appears at the end of the opinion seems to address the question whether it is possible for the appellant's identity to be the suppressible fruit of the illegal Arizona arrest. The majority concludes that, because a majority of Supreme Court justices in *United States v. Crews*[1] concluded that a defendant's face cannot be the suppressible fruit of a constitutional violation,[2] DNA evidence linking the defendant to the offense in Arizona also could not be suppressible.

In *Crews,* the Supreme Court held that the fact that the appellant had been illegally detained did not require that an in-court identification by a robbery victim in the case be suppressed.[3] Justice Brennan delivered the lead opinion in the case and the opinion of the Court with the exception of Part IID, in which he left open the question whether a defendant's person should be considered evidence and, as a result, could be suppressed because of an illegal arrest.[4] The lead opinion concluded that

because before the police illegally arrested the defendant, the victim had given a description of the defendant that matched his appearance.[5] As a result, the victim's in-court identification could not have been tainted by police misconduct.

Five justices did not join Part IID of Justice Brennan's opinion.[6] Instead, they relied upon the Court's holding in *Frisbie v. Collins*[7] that a defendant may be properly brought to trial despite the fact that his arrest was violative of the federal constitution. Thus, a majority of the Supreme Court seems to have concluded that a person's face cannot be suppressed merely because he was illegally arrested.

If we were dealing with the identification of the appellant's face, the concurring opinions in *Crews* would be persuasive.[8] But I am not sure whether the same proposition ought to apply to DNA evidence.

The face and how it appears is evidence of identity. A witness can take his memory of an offense and compare it to a defendant's appearance in Court. DNA evidence is also evidence of identity. A scientist can compare DNA evidence obtained from a crime scene to DNA evidence from a defendant. Fingerprints are also evidence of identity. A fingerprint expert can compare fingerprints from a crime scene to a defendant's fingerprints.

1. 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

2. *Id.,* at 477, 100 S.Ct. 1244 (Powell, J., concurring, in which Blackmun, J., joined); *Id.,* at 477–78, 100 S.Ct. 1244 (White, J., concurring, which Burger, C.J., and Rehnquist, J., joined).

3. *Id.,* at 477, 100 S.Ct. 1244.

4. *Id.,* at 474–77, 100 S.Ct. 1244.

5. *Ibid.*

6. *Id.,* at 477, 100 S.Ct. 1244 (Powell, J., concurring, in which Blackmun, J., joined); *Id.,* at 477–78, 100 S.Ct. 1244 (White, J., concurring, which Burger, C.J., and Rehnquist, J., joined).

7. 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952).

8. This is merely persuasive authority because the Court was not directly addressing this question in *Crews* and because the

Of course, we are not really talking about suppressing a person's face. It is the testimony that links the defendant in court to the identifying evidence or appearance left at the scene of the crime that is or is not suppressed. And the Supreme Court has held that, under certain circumstances, a witness's in-court identification may be suppressed.[9] Also, the Supreme Court has held that, under certain circumstances, fingerprint identification may be suppressed.[10]

I do not think that *Crews*, alone, could sufficiently disposes of this case. And we need not even reach that question because, as the majority explains, the taint of the appellant's illegal arrest is attenuated by the fact that the Texas authorities did not violate the appellant's rights.[11]

I disagree with the majority that time or interceding events attenuated the taint. Although these factors seem logically appropriate in the context of a statement obtained after an illegal seizure, I do not see their relevance in this context. If less time had passed, the Texas authorities' lack of complicity in the constitutional violation would be no different. The same is true for the interceding events described by the majority.

At bottom, I agree with Judge Womack's concurrence that, because the evidence used in Texas was not illegally obtained, the evidence was admissible. But I reach that conclusion after considering (1) whether there was a causal connection between the appellant's arrest in Arizona and the evidence used in Texas and (2) whether the taint of the illegal arrest was attenuated. I conclude that there was a causal connection and that the taint was attenuated. As a result, I concur in the judgment.

WOMACK, J., concurring, in which JOHNSON and COCHRAN, JJ., joined.

The court of appeals held that the appellant's Fourth Amendment objections were properly overruled because no evidence that was obtained from the illegal seizure in Arizona was admitted in his trial in Texas. *See Thornton v. State*, No. 2–01–152–CR (Tex. Ct App.-Fort Worth Dec. 12, 2002) (unpublished). I agree, and on that basis I concur in the judgment of the Court.

---

9. *See Stovall v. Denno*, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

10. *See Davis v. Mississippi*, 394 U.S. 721, 727, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

11. *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).