NUMBER 13-03-388-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RAUL ADAM MARTINEZ, JR. Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 248th District Court of Harris County, Texas.

 


OPINION


Before Chief Justice Valdez and Justices Yanez and Castillo


Opinion by Chief Justice Valdez



 Appellant, Raul Adam Martinez, Jr., was convicted of capital murder and sentenced
to life in prison. Martinez contends the trial court made a constitutional error by denying
his motion to suppress a videotaped statement he made to police. The sole point of error
on appeal is that Martinez's videotaped statement should not have been admitted into
evidence at trial because it was made during an interrogation that began without Miranda
warnings, even though Martinez was given the appropriate warnings just prior to making
the statement. Appellee, the State, responds that: (1) Martinez has not met the burden
of presenting and developing a record to show error requiring reversal; (2) neither a
substantive interrogation nor an incriminating statement occurred before Martinez
voluntarily waived his constitutional rights by making the statement; and (3) Martinez was
not harmed by the admission of his videotaped statement. We affirm the trial court's
judgment. 

I. BACKGROUND

A. Factual Background

 Martinez was arrested by Officer Macario Sosa for the capital murder of Manuel
Arriaga-Molina. During the arrest, Sosa handcuffed Martinez, told him he was under arrest
for capital murder, placed him in a police car, and drove him to the police station. No
Miranda warnings were given at the scene of the arrest or at the police station. Upon
arriving at the police station, Sosa and his partner, Sergeant Hernandez, asked Martinez
if he wanted to speak with them about the incident. The three briefly discussed the
incident, but Martinez denied knowing anything about it. 

 Shortly after his brief discussion with the officers, Martinez was turned over to
another officer, who administered a polygraph test. It took the polygrapher three to four
hours to create the test questions from the case file and administer the test. The record
does not contain the questions asked during the test or a report of the test. Martinez was
then returned to Officers Sosa and Hernandez and allowed to use the bathroom, telephone
his father, and eat. At this point, Officers Sosa and Hernandez confronted Martinez with
the fact that areas of deception had been detected during the polygraph test. They then
took Martinez from the police station to a municipal court, where he was given his statutory
and constitutional warnings by a magistrate. From municipal court, Martinez was taken to
a different police station and placed in an interrogation room. Finally, Officers Sosa and
Hernandez sat down with Martinez, gave him Miranda warnings, and questioned him; the
interrogation was videotaped.

B. Procedural Background

 A suppression hearing to determine the admissibility of Martinez's videotaped
statement was held shortly before trial; Officer Sosa was the only witness. Officer Sosa
described the aforementioned arrest and interrogation process. Martinez's defense
counsel highlighted the fact that during his recorded statement, Martinez made two
references to statements he was told by another officer. The statements were made when
Officers Sosa and Hernandez conveyed the gravity of the situation by reminding Martinez
that three people were shot and one was killed. Martinez casually pointed to the wall and
responded, "[t]hat's what the dude told me over there." Officer Sosa testified that Martinez
was referring to the polygraph examiner. A record was not created of the questions,
statements, or results of the polygraph examination. The trial court denied Martinez's
motion to suppress his videotaped statement.

II. DISCUSSION

 Martinez contends that his videotaped confession was the product of a type of
"question-first" interrogation made unconstitutional by the U.S. Supreme Court. (1) Martinez
argues that the unwarned and warned portions of the interviews were done as part of a
tactically continuous process aimed at getting him to make admissions before he was
aware of his legal rights. He asks us to apply the Fifth Amendment analysis used in
Missouri v. Seibert, 542 U.S. 600 (2004). See U.S. Const. amend V.

A. The Seibert Case

 The Seibert case involved murder and questionable police conduct. Patrice
Seibert's 12-year-old son, Jonathan, had cerebral palsy, and when he died in his sleep,
she feared charges of neglect because of bedsores on his body. She allowed her other
son and a friend to "torch" her mobile home while Jonathan's body and Donald, a mentally
ill teenager staying with Seibert, were inside. Donald was left inside the home to avoid any
appearance that Jonathan had been unattended. When the local police arrested Seibert,
they intentionally questioned her without Miranda warnings for 30 to 40 minutes. During
the questioning, an officer squeezed Seibert's arm and repeated, "Donald was also to die
in his sleep." After Seibert admitted she knew Donald was meant to die in the fire, she was
given a 20-minute coffee and cigarette break. She was then returned to the same room
by the same officer, given Miranda warnings, and waived those warnings. The questioning
during this session began, "Ok, 'trice, we've been talking for a little while about what
happened . . .." 

 Seibert was charged with first-degree murder for her role in Donald's death. At a
supression hearing before trial, she sought to exclude both her pre-warning and post-warning statements. The trial court excluded only her pre-warning statements and she was
convicted of second-degree murder. On appeal, the U.S. Supreme Court, in a plurality
opinion, affirmed.

 Justice Souter's opinion, which was joined by three other Justices, held that "[t]he
threshold issue when interrogators question first and warn later is . . . whether it would be
reasonable to find that in these circumstances the warnings could function 'effectively' as
Miranda requires." Seibert, 542 U.S. at 611-12. Any Miranda warning "inserted in the midst
of [a] coordinated and continuing interrogation" is problematic; and unless "a reasonable
person in the suspect's shoes could have seen the station house questioning as a new and
distinct experience, [and thus] the Miranda warnings could have made sense as presenting
a genuine choice whether to follow up on the earlier admission," the plurality would find the
post-warning statements inadmissible. Id. at 614-16. The plurality set forth five "relevant
facts that bear on whether Miranda warnings delivered midstream could be effective:"

 [1] the completeness and detail of the questions and answers in the first
round of interrogation, [2] the overlapping content of the two statements, [3]
the timing and setting of the first and the second, [4] the continuity of police
personnel, and [5] the degree to which the interrogator's questions treated
the second round as continuous with the first. 


Id. at 615. These factors, all of which concern the relationship between the first and
second interrogations, are intended to aid courts in determining whether an initial,
unwarned interrogation operates to "thwart Miranda's purpose of reducing the risk that a
coerced confession would be admitted." Id. at 617.

 Justice Kennedy concurred in the judgment, but on "narrower" grounds. Id. at 622
(Kennedy, J., concurring in judgment only). Like the plurality, Justice Kennedy wrote that
"[t]he interrogation technique used in this case is designed to circumvent Miranda v.
Arizona," and "statements obtained through the use of this technique are inadmissible." Id.
at 618. For Justice Kennedy, however, the plurality's test, which "envisions an objective
inquiry from the perspective of the suspect, and applies in the case of both intentional and
unintentional two-stage interrogations, . . . cuts too broadly." Id. at 621-22. Instead, in
Justice Kennedy's view, unless the police used "the two-step interrogation technique . . .
in a calculated way to undermine the Miranda warning, then "[t]he admissibility of
postwarning statements should continue to be governed by the principles of Elstad." (2) Id.
at 622. In those "infrequent case[s]" where the interrogating officer deliberately uses the
two-step strategy, "postwarning statements that are related to the substance of prewarning
statements must be excluded unless curative measures are taken before the postwarning
statement is made." Id. If the two-step method was used deliberately, the interrogating
officer must take "curative measures . . . designed to ensure that a reasonable person in
the suspect's situation would understand the import and effect of the Miranda warning,"
such as "a substantial break in time and circumstances between the prewarning statement
and the Miranda warning," or "an additional warning that explains the likely inadmissibility
of the prewarning custodial statement." Id.

 Justice O'Connor authored the four-member dissent, which concluded that "the
plurality gives insufficient deference to Elstad," and stated that the Court should have
"analyze[d] the two-step interrogation procedure under the voluntariness standards central
to the Fifth Amendment and reiterated in Elstad." Id. at 628-29 (O'Connor, J., dissenting).

B. The Holding Under Seibert

 Under Miranda, police officers are required to inform individuals about to undergo
custodial interrogation that the state intends to use their statements to convict them, that
they have the right to remain silent, and that they have the right to have counsel present
during questioning. Miranda, 384 U.S. at 468-70. An individual may effectively waive
these rights "provided the waiver is made voluntarily, knowingly, and intelligently." Id. at
444, 475. In order for the waiver to be made voluntarily, it "must have been made with a
full awareness of the nature of the right being abandoned and the consequences of the
decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).

 Our reading of Seibert is that a confession is voluntarily made if it is made after
proper and functional Miranda warnings. See Seibert, 542 U.S. at 612 (plurality opinion). 
Seibert deals with the admissibility of statements made after the police give "midstream"
warnings, that is, when police begin a custodial interrogation without advising the suspect
of his Miranda rights, obtain incriminating statements, and then continue questioning after
administering warnings in order to re-elicit the incriminating statements. Id. The plurality
opinion holds that "when interrogators question first and warn later," the threshold issue is
"whether it would be reasonable to find that in these circumstances the warnings could
function 'effectively' as Miranda requires." Id. at 611-12.

 The dissent aptly points out that the holding of a plurality decision is usually found
in the opinion that concurs in the judgment on the narrowest grounds. Marks v. United
States, 430 U.S. 188, 193 (1977) (holding that ordinarily, where "a fragmented Court
decides a case and no single rationale explaining the result enjoys the assent of five
Justices, the holding of the Court may be viewed as that position taken by those Members
who concurred in the judgements on the narrowest grounds." (internal quotation marks
omitted)); see also Thornton v. State, 145 S.W.3d 228, 234 n.10 (Tex. Crim. App. 2004).

 However, the dissent fails to recognize the practical limitations of Marks. The Marks
rule produces a determinate holding only when one opinion is a logical subset of other,
broader opinions. United States v. Eckford, 910 F.2d 216, 219 n.8 (5th Cir. 1990) ("The
Marks 'narrowest grounds' interpretation of plurality decisions comprehends a least
common denominator upon which all of the justices of the majority can agree."); King v.
Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). When the plurality and concurring
opinions take distinct approaches, and there is no narrowest opinion representing the
common denominator of the Court's reasoning, Marks becomes problematic. United
States v. Carrizales-Toledo, 454 F.3d 1142, 1151 (10th Cir. 2006). Marks does not apply
when the various opinions supporting the Court's decision are mutually exclusive. See
Homeward Bound, Inc. v. Hissom Mem'l Ctr., 963 F.2d 1352, 1359 (10th Cir. 1992) (citing
King, 950 F.2d at 782). 

 We find the holding in Seibert to be in the plurality opinion for two reasons. First,
there is no internal rule tethering the plurality and concurrence in judgment. See Ken
Kimura, A Legitimacy Model for the Interpretation of Plurality Decisions, 77 Cornell L. Rev.
1593, 1599-1600 (1992). (3) The plurality's rationale focuses on the defendant's
comprehension of his rights during the interrogation process. Seibert, 542 U.S. at 613-14
([W]hen Miranda warnings are inserted in the midst of coordinated and continuing
interrogation, they are likely to mislead and 'depriv[e] a defendant of knowledge essential
to his ability to understand the nature of his rights and the consequences of abandoning
them.'") (quoting Moran v. Burbine, 475 U.S. 412, 424 (1986)). The plurality's reasoning
fits within the framework surrounding Miranda. See Duckworth v. Eagan, 492 U.S. 195,
203 (1989); California v. Prysock, 453 U.S. 355, 359 (1981). By contrast, Justice
Kennedy's concurrence focuses on the state-of-mind of the interrogating officers, drawing
a distinctions between accidental and intentional actions. It urges the application of Elstad
unless a deliberate two-step strategy is used; if the deliberate two-step strategy is used,
curative measures must be employed before the postwarning statement is made in order
for that statement to be admissible. Seibert, 542 U.S. at 621 (Kennedy, J., concurring in
judgment only). 

 Furthermore, not only was Seibert's concurrence the decision of only one (or
arguably two) Justice(s), but it was expressly rejected by seven other Justices of the
Supreme Court. (4) The plurality argued that, "[b]ecause intent of the officer will rarely be as
candidly admitted as it was here (even as it is likely to determine the conduct of the
interrogation), the focus is on facts apart from the intent that show the question first tactic
at work." Id. at 617 n.6. Justice O'Connor's rebuff is even more stinging. Justice
O'Connor claimed that Justice Kennedy's rationale creates ambiguity in analyzing two-stage interrogation cases because, "in addition to addressing the standard Miranda and
voluntariness questions, courts will be forced to conduct the kind of difficult, state-of-mind
inquiry that we normally take pains to avoid." Id. at 627 (O'Connor, J., dissenting).

 The underlying rationales of Justice Kennedy's concurrence and the plurality opinion
are so divergent that they render Marks's narrowest-grounds-interpretation rule
inapplicable. Generally, the narrowest ground merits only persuasive precedential value,
Kimura, 77 Cornell L. Rev. at 1617, not mandatory precedential value. Because Justice
Kennedy's concurrence is clearly a minority view and does not comport with the
jurisprudence surrounding Miranda, we find the plurality opinion is more persuasive and
therefore governs. (5) 

C. Response to the Dissent

 In applying Justice Kennedy's holding, the dissent summarily finds deliberate two-stage intent in either a failure to make a record of pre-Miranda statements or the very act
of engaging in "two-stage" interrogation. The dissent fails to perform an Elstad analysis
of whether the officer's omission of Miranda warnings was "a simple failure to administer
the warning, unaccompanied by any actual coercion or other circumstances calculated to
undermine the suspect's ability to exercise his free will." Elstad, 470 U.S. at 318, n.5. The
dissent's inability to successfully conduct an Elstad inquiry exposes the practical problems
of applying the rule dictated by Justice Kenney's concurrence in Seibert. As noted in
Justice O'Connor's dissent, evidentiary difficulties have led the Supreme Court to reject an
intent-based test in several criminal procedures. Seibert, 542 U.S. 626. (citing New York
v. Quarles, 467 U.S. 649 (1984). Unlike Seibert, Officer Sosa did not own up to a
deliberate two-stage interrogation. The silent record in the instant case does not reveal
"any actual coercion or other circumstances calculated to undermine" Martinez's ability to
exercise his free will.

 The dissent cites Jones v. State, 119 S.W.3d 766 (Tex. Crim. App. 2003), as
authority condemning two-stage interrogation. Jones was published a year before Seibert
was decided, dealt with facts equally as disturbing as Seibert, and is distinguishable from
Martinez's case. In Jones, appellant orally admitted his involvement in two murders. Id.
at 771-72. As appellant confessed, an officer wrote down "verbatim" what appellant said
on a statement form. Id. When appellant finished, the officer sat down next to him and
went over the legal rights that appeared at the top of the written form. Id. Then the officer 
and appellant read the statement together, appellant corrected mistakes, initialed revisions,
and signed the statement at the bottom. Id. 

 The dissent's reliance on Jones is misplaced. The facts in Jones were so egregious
that the Court of Criminal Appeals rested its opinion on Miranda. It refused to apply Elstad
- the only other doctrinal tool available at the time - because "[t]o apply Elstad here and
declare the [appellant's] statement admissible by virtue of the late admonishment of the
required warnings would undermine the spirit and intent of Miranda." Id. at 775. Seibert
is now the law of the land and provides an appropriate analysis given the facts of the
instant case. Martinez's rights were not trampled like those of the appellant in Jones. The
instant case shows a meaningful waiver of Miranda because the questioning was not
continuous. To the contrary, the officers' questions were punctuated by a trip to a
municipal court, where Martinez was given Miranda warnings by a magistrate.

D. Standard of Review

 Motions to suppress are subject to a bifurcated standard of review. Carmouche v.
State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In reviewing the trial court's ruling on
a motion to suppress, we afford deference to the trial court's determination of the historical
facts and rulings on mixed questions of law and fact if the resolution of those questions
turns upon the credibility and demeanor of witnesses. Guzman v. State, 955 S.W.2d 85,
87-88 (Tex. Crim. App. 1997); Morfin v. State, 34 S.W.3d 664, 666 (Tex. App.-San Antonio
2000, no pet.). Appellate courts are not at liberty to disturb the trial court's findings of fact
as long as they are supported by the record. However, we decide de novo whether the trial
court erred in misapplying the law to the facts. Carmouche, 10 S.W.3d at 327; Guzman,
955 S.W.2d at 87-88; Morfin, 34 S.W.3d at 666.

E. Analysis

 The instant case presents a Seibert problem because Martinez made pre-Miranda
statements to police officers and a polygraph examiner, was then given separate Miranda
warnings by a magistrate and the interrogating officers, and finally appeared in a
videotaped interrogation that was admitted into evidence at trial. 

 At the outset, we note that there is no record of Martinez's pre-warning statements
made to Officers Sosa and Hernandez or the polygraph examiner. The first two factors
that the Seibert plurality found relevant in determining whether Miranda warnings delivered
midstream are effective are the completeness and detail of the questions and answers in
the first round of interrogation and the overlapping content of the two statements. The
dissent is troubled by Martinez's two references to the polygrapher telling him that three
people were shot during the incident. Unlike Seibert, Martinez was repeating the
polygrapher's general statements regarding the crime, not his own unwarned statements. 
Therefore, the first two Seibert factors are not applicable in Martinez's case. 

 In this case, the last three Seibert factors point toward a meaningful waiver of
Martinez's right to remain silent. The timing, setting, and general circumstances
surrounding the second interrogation were formal enough to apprise Martinez of the gravity
of the situation. Shortly after the polygraph test was administered, Martinez was given
Miranda warnings by a magistrate and then taken to a different police station for further
interrogation. Before the post-warning interrogation, Martinez was apprised of his rights
by Officer Sosa. Having been given Miranda warnings by a magistrate and Officer Sosa,
Martinez made the videotaped statement. While Officers Sosa and Hernandez interacted
with Martinez before and after the Miranda warnings, their questions did not rely on
statements made prior to the warnings. 

III. CONCLUSION

We conclude that admission of the videotaped statement did not constitute
constitutional error because it was made after a proper and functional Miranda warning. 
Martinez's sole point of error is overruled. The judgment of the trial court is affirmed.


 

 ROGELIO VALDEZ

 Chief Justice



Dissenting opinion by Justice Linda Reyna Yañez.


Publish. 

Tex. R. App. P. 47.2(b).


Opinion delivered and filed 

this the 9th day of November, 2006.
1. Missouri v. Seibert, 542 U.S. 600 (2004), was handed-down a few days after Martinez filed his brief. 
Martinez's brief relies upon State v. Seibert, 93 S.W.3d 700 (Mo. 2002), cert. granted 123 S. Ct. 2091 (2003). 
No supplemental brief was filed after the Supreme Court handed-down its opinion. 
2. Oregon v. Elstad, 470 U.S. 298, 301, 314-16 (1985). In Elstad, the police went to a young suspect's
house to take him into custody on a charge of burglary. Id. One officer spoke with the mother in the kitchen,
while another briefly waited with the suspect in the living room. The officer in the living room told the young
man he "felt" he was involved in the burglary. The young man acknowledged being at the scene. At the
outset of the interrogation at the police station, the suspect was given Miranda warnings and made a full
confession. The Court held the second statement admissible and voluntary and rejected the "cat out of the
bag" theory that any short, earlier admission obtained in arguably innocent neglect of Miranda determined the
character of the later, warned confession. Id. at 311-14.
3. Ascertaining the appropriate legal rule requires a close analysis of the plurality opinion and Justice
Kennedy's concurring opinion. For, 

 [a]lthough the narrower legal rule may share certain aspects of the broader legal rule, it does
not necessarily follow that the Justices supporting the broader rule accept the validity of the
narrower rule. Indeed, the fact that the decision creates a split concurrence suggests that
some Justices do not accept the validity of the narrower rule. To construe the narrower legal
rule as the majority rule is misguided. It is true that the coalition of Justices supporting the
broader rule would necessarily reach the same outcome under the narrower rule. This seems
to suggest that this coalition implicitly accepts the narrower rule. However, in future decisions,
the coalition supporting the broader rule will "implicitly" agree with the narrower rule only on
those occasions when the same particular outcome is achieved. When the alternative
outcome results, no basis exists for believing that the Justices supporting the broader rule
will still accept the principles underlying the narrower rule. This one-way flow of legitimacy
disallows imputing a majority agreement on the narrower rule.

Ken Kimura, A Legitimacy Model for the Interpretation of Plurality Decisions, 77 Cornell L. Rev., 1593, 1604
(1992).
4. Justice Breyer joined in Justice Souter's plurality entirely; he also wrote his own concurrence that
partially joins Justice Kenney's concurrence, but articulates a slightly different rule in that, "[c]ourts should
exclude the 'fruits' of the initial unwarned questioning unless the failure to warn was in good faith." Seibert,
542 U.S. at 617 (Breyer, J., concurring).
5. We are mindful that the U.S. Court of Appeals for the Fifth Circuit has recently issued two
unpublished opinions finding Seibert's holding in Justice Kennedy's concurrence. See, e.g. , United States
v. Courtney, No. 05-30156, 2006 U.S. LEXIS 21965, at *11 (5th Cir. Aug. 20, 2006) (unpublished opinion)
United States v. Hernandez, No. 05-20158, 2006 U.S. App. LEXIS 23250, at *7, n.1 (5th Cir. Sept. 12, 2006)
(per curium) (unpublished opinion). Perhaps the Fifth Circuit can find an internal rule coursing through the
plurality and Justice Kennedy's concurrence that we cannot.