**AFFIRM; and Opinion Filed July 30, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01491-CR**

**WILLIE JOE BOGGS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F10-25681-J**

## MEMORANDUM OPINION
Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice Myers

Appellant Willie Joe Boggs was convicted of burglary of a habitation and sentenced to three years in prison and a $1500 fine. In one issue, he argues the evidence is legally insufficient to support the conviction. We affirm.

### DISCUSSION

In support of his contention that the evidence is legally insufficient, appellant argues that, other than his recorded statement, "there is absolutely no evidence" connecting him to the offense. He also argues that his recorded statement was provided under duress and that, "[e]ven if the statement were valid, it would only have sustained a charge of trespass as [a]ppellant never stated he completed the act of burglary."

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact

could have found the essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We defer to the jury's credibility and weight determinations because the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson,* 443 U.S. at 326; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).

The indictment against appellant alleged that, on or about November 30, 2010, in Dallas County, Texas, he:

> did unlawfully, intentionally and knowingly enter a habitation without the effective consent of BARBARA MURILLO, the owner thereof, with the intent to commit theft,
>
> and further, said defendant did intentionally and knowingly enter a habitation without the effective consent of BARBARA MURILLO, the owner thereof, and did then and there commit and attempt to commit theft . . . .

*See* TEX. PENAL CODE ANN. § 30.02(a)(1), (3). Entering a habitation without the effective consent of the owner is common to burglary under subsections (a)(1) and (a)(3) of section 30.02. *See id.* The difference between the subsections is that (a)(1) requires entry with intent to commit a felony, theft, or an assault, and (a)(3) requires entry and the commission or attempt to commit a felony, theft, or an assault. *See id.*; *Warren v. State*, No. 05-12-00916-CR, 2013 WL 3717802, at *4 (Tex. App.—Dallas July 12, 2013, no pet. h.) (mem. op., not designated for publication). The jury charge instructed the jury pursuant to both subsections (a)(1) and (a)(3), and the charge included definitions of enter, habitation, consent, effective consent, owner, and intentional and knowing conduct.

The jury charge also instructed the jury it could find appellant guilty either as a principal or a party to the offense. Under the law of parties, a person may be convicted as a party to the offense if the offense is committed by his own conduct, by the conduct of another for which he is

criminally responsible, or both. TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense "committed by the conduct of another" if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). Circumstantial evidence alone can be sufficient to establish guilt. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Furthermore, an individual can be guilty of burglary of a habitation even though he does not personally enter the burglarized premises if he is acting together with another in the commission of the offense. *See Powell v. State*, 194 S.W.3d 503, 506–07 (Tex. Crim. App. 2006) (evidence legally sufficient to support conviction of burglary under law of parties when appellant was present at scene of burglary, was later found in possession of truck observed at crime scene, and knew man that pleaded guilty to same burglary); *see also Young v. State*, No. 14-05-01150-CR, 2006 WL 3407840, at \*4 (Tex. App.—Houston [14th Dist.] Nov. 28, 2006, pet. dism'd, untimely filed) (mem. op., not designated for publication); *Lopez v. State*, No. 01-05-01000, 2006 WL 3316784, at \*4 (Tex. App.—Houston [1st Dist.] Nov. 16, 2006, pet. ref'd) (mem. op., not designated for publication). Because the jury charge in this case provided that the jury could find the defendant guilty as either a principal or a party to the offense, the evidence is sufficient if it supports either theory. *See Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

According to the record, Barbara Murillo, a teacher with the Dallas Independent School District, testified that she did not know appellant or his accomplice, Damien Bernard, and had not given them permission to enter her home. Murillo testified that she first learned of the burglary when she received a telephone call at work on November 29, 2010, from a police officer telling her they had been notified by Murillo's neighbor, who lived behind her, that Murillo's house had been burglarized. When she arrived at the crime scene and went inside her house, she could see drawers pulled out, doors left open, furniture pushed aside, and various

personal belongings scattered on the floor. This immediately caught Murillo's attention because she normally kept a "very tidy" house. She testified that the damage to her house's rear window, rear door, and rear door frame had not been present when she left for work that morning. Nor had the muddy shoe print she saw on her door been there prior to the burglary. Murillo identified various items recovered by the police as her property—property that had been in her home prior to the burglary.

Kristi Selover and Murillo were neighbors. They lived across an alleyway from one other in Garland, Texas, and had known each other for several years. On the morning of November 29, 2010, Selover was in the restroom of her home getting ready to go to a class she was attending when she heard Murillo's dog barking. Selover's two dogs, who had just been let outside, were also barking. But Selover testified that the sound of Murillo's dog barking was "attention-grabbing" because it was a "very docile kind of dog" and, in all of the years Selover had lived in her house, she never heard it bark.

Selover went to the fence in her back yard. When she stood on a bench and looked over the fence into her neighbor's property (the dog was still barking), Selover noticed a car she had never before seen, a silver Toyota Corolla, parked in Murillo's driveway with the trunk open and facing the door of Murillo's garage. Selover wrote down the vehicle's license plate number. She noticed the car was equipped with "rims" and that one person was partially visible in the driver's seat, but she could not identify the driver or discern any physical characteristics. Then, while Selover was watching the car, it "just took off." As the vehicle quickly drove away, Selover could see the trunk was still open and "full of electronic stuff." Selover called 911 and provided the police with a description of the car and its license plate number. An audio recording of the 911 call was admitted into evidence and published to the jury.

Garland police officer David Wade testified that on November 29, 2010, he assisted other officers in conducting a stop of a Toyota Corolla on Highway 635 that matched the license plate number and description provided by Selover. Wade explained that the area where the car was spotted "was probably a couple of miles, maybe a mile from the location" of the burglary. When he arrived at the scene, Wade noticed the trunk of the car was "halfway" open and that a television and some other items were in the trunk. The police removed Damien Bernard from the car and, after being advised of his *Miranda* rights, he told them he had committed a burglary and that someone he knew as "Big Willie" was also involved in the crime. Murillo testified that an officer took her to the Corolla and that she identified a flat screen television, a laptop computer, a Wii, various Wii games, and a "Wii fit board," all found in the vehicle, as her property.

Wade provided the name "Big Willie" to Randall Hawkins, a police officer assigned to the Garland Police Department's gang unit. Hawkins was at the burglarized home when he received this information over the radio, and he "searched the Garland files for that nickname and came up with [appellant's] name and address." Hawkins testified that he went to the address on record for appellant, which was only four or five blocks (or within one-half of a mile) from the crime scene. He spoke to appellant, determined he was involved in the offense, and took him into custody.

On November 30, 2010, appellant was interviewed at the Garland jail by Garland police detective Timothy Freeman. A video recording of this interview was admitted into evidence and published to the jury.[1] At the start of the interview, Freeman read appellant the constitutional warnings. Appellant told Freeman he simply waited in his car for Bernard, and that the witness likely saw him as he was driving away. Appellant insisted he did not get out of his car and go to

[1] The video footage on the DVD, State's exhibit 24, is divided into ten files, each of which has to be played separately.

Murillo's house, and did not participate in the burglary. Appellant also repeatedly denied that the shoe print found on Murillo's door belonged to him, and claimed Bernard kicked the door. After talking to Freeman for over forty minutes, appellant indicated he wanted to stop the interview. Freeman said, "We're wasting our time," and told appellant to wait outside the door. They got up from the table and left the room.

According to Freeman's testimony, after the interview ended, he escorted appellant out of the interview room to the "book-in section," where appellant would be booked and fingerprinted. As they were walking to the booking area, appellant asked Freeman what was going to happen to him. Freeman told appellant he would be sent to "county" and that a case would be filed against him. Freeman testified that appellant thought "about it for a second," and then said that he wanted to go back into the interview room and be interviewed further. Freeman explained that since appellant had invoked his constitutional rights, it would have to be made clear on the recording he wanted to talk further with Freeman. Freeman estimated that the conversation with appellant outside the interview room lasted "probably three minutes."

After Freeman and appellant went back into the interview room, the video recording shows the detective asked appellant, "You wanted to come back in here, right? Right?" Appellant muttered something in response, to which Freeman said, "Say it out loud. It's your own free will, right?" Appellant replied, "It's my own free will," after which Freeman asked appellant, "So I'm asking you one more time, man to man, to be honest with me about what happened." During the interview that followed, appellant admitted he knew that he and Bernard were there to break into the home. He denied entering Murillo's house or taking anything from the house, but told Freeman he tried to kick the door and it would not break, and that was when Bernard broke the window. Freeman asked appellant about the vehicle, and appellant said he was sitting in the vehicle's driver's seat, "the lady came outside," and he drove away. Freeman

asked appellant why he was telling him this now, when appellant denied kicking the door during their first interview.[2] Appellant replied that he had been trying to tell Freeman he did not leave the car, but that the only way Freeman would "understand this from me" would be if he said that he saw Bernard "doing the burglary."

The jury was the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, and it was the exclusive province of the jury to reconcile conflicts in the evidence. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998); *Orsag v. State*, 312 S.W.3d 105, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). Viewing the evidence in this case in the light most favorable to the verdict, there is legally sufficient evidence to support the verdict. In addition to the testimony of Murillo, Selover, and Freeman, appellant initially denied any involvement in the burglary, then later altered his account of what happened and admitted to Freeman that he knew he and Bernard were there to burglarize Murillo's home, and that appellant kicked the door—not Bernard. Although appellant now attempts to undermine the recorded statement by arguing it was the product of duress, this issue was never raised at trial.[3] *See Sanders v. State*, 715 S.W.2d 771, 775 (Tex. App.—Tyler 1986, no pet.) (failure to timely raise the issue of voluntariness results in waiver of the issue and precludes appellate review); *see also Rodriguez v. State*, No. 05-11-01734-CR, 2013 WL 438686, at *2 (Tex. App.—Dallas Feb. 5, 2013, no pet.) (not designated for publication). Additionally, there is no evidence appellant was subjected to duress by the police. Therefore, the evidence in this case is sufficient to support a finding that appellant committed the offense as a party.[4] We overrule appellant's issue.

---

[2] When he was cross-examined at trial regarding his interviewing techniques, Freeman acknowledged that some of the things he told appellant during the interview, such as that the shoe prints found on Murillo's door had been matched to appellant's shoe, and that the witness followed the car appellant was driving, were not true.

[3] Defense counsel did not object to the admission of State's exhibit 24.

[4] Appellant analogizes to cases applying the accomplice witness rule. But these cases are distinguishable because appellant's accomplice, Bernard, did not testify in this case, and only in-court accomplice testimony is subject to the article 38.14 requirement of corroboration. *See*

We affirm the trial court's judgment.

/Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111491F.U05

---

*Bingham v. State*, 913 S.W.2d 208, 210–11 (Tex. Crim. App. 1995) (op. on reh'g) (holding that out-of-court statements do not fall under the definition of "testimony").



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WILLIE JOE BOGGS, Appellant

No. 05-11-01491-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F10-25681-J.
Opinion delivered by Justice Myers.
Justices Bridges and FitzGerald participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of July, 2013.

/Lana Myers/
LANA MYERS
JUSTICE