**James Earl SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–85–0090–CR.**

Court of Appeals of Texas,
Tyler.

July 31, 1986.

R. Kent Phillips, Longview, for appellant.

Carter Beckworth, Dist. Atty., Longview, for appellee.

Before SUMMERS, C.J., and COLLEY and BILL BASS, JJ.

COLLEY, Justice.

James Earl Sanders ("appellant") was convicted by a jury of burglary of a building. Appellant elected to have the jury assess punishment, and upon finding that prior to commission of the offense at issue appellant had twice been convicted of felonies, the jury assessed punishment at life imprisonment.

Appellant presents three grounds of error. In his first ground, appellant contends that he was denied effective assistance of counsel at trial in violation of the First and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Texas Constitution. It is appellant's position that the record as a whole shows that his trial counsel was constitutionally ineffective in representing him at trial, and he details seven specific deficiencies in the representation. No challenge is made to the sufficiency of the evidence.

The right of criminal defendants to be represented by counsel is a fundamental component in our criminal justice system. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 2043, 80 L.Ed.2d 657 (1984). Effective assistance of counsel is essential to assure defendant's fundamental right to a fair trial, because it is through counsel that a defendant's other rights are secured and the prosecution's case is subjected to meaningful adversarial testing. *Id.,* at 2045. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

A two pronged test must be satisfied before a claim of ineffective assistance of counsel can succeed. *Strickland v. Washington,* 104 S.Ct. at 2064; *Moore v. State,* 700 S.W.2d 193, 205 (Tex.Cr.App.1985).

The first prong requires that appellant show counsel's performance was deficient under prevailing professional norms. *Strickland v. Washington,* 104 S.Ct. at 2064; *Moore v. State,* 700 S.W.2d at 205. In meeting this first requirement, appellant must overcome a strong presumption that counsel's performance was "within the wide range of reasonable professional assistance." *Strickland v. Washington,* 104 S.Ct. at 2066. The second prong of the test requires that appellant show a reasonable probability that but for counsel's errors the result would have been different. *Id.* at 2068. In other words, counsel's errors must be such as to undermine confidence in the outcome. In challenging a conviction, the inquiry is whether, in the absence of the asserted errors, there is a reasonable probability that the jury would have had a reasonable doubt as to guilt. *Id.* at 2069.

■ Whether counsel provided constitutionally effective assistance is determined on the totality of the representation. *Moore v. State,* 700 S.W.2d at 206; *Johnson v. State,* 691 S.W.2d 619, 627 (Tex.Cr. App.1984). Generally, isolated errors reflected in the record do not render counsel ineffective. *Moore v. State,* 700 S.W.2d at 205; *Johnson v. State,* 691 S.W.2d at 627. Allegations of ineffective assistance of counsel can be sustained only if firmly founded. *Smith v. State,* 676 S.W.2d 379, 385 (Tex.Cr.App.1984).

■ The insufficiencies of representation asserted in this case begin with inadequate preparation for trial. Defense counsel has a duty to conduct a thorough independent investigation of the facts of the crime alleged against his client, regardless of the client's representations. *Ex parte Duffy,* 607 S.W.2d 507, 516–517 (Tex.Cr.App. 1980).[1] The express purpose of the required investigation is to enable defense counsel to "have a firm command of the facts of the case as well as governing law." *Id.* at 516.

1. *See also Strickland v. Washington,* 104 S.Ct. at 2066. The Supreme Court described counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."

Appellant testified at the motion for new trial that Jonathan Crow, his court appointed trial counsel, visited him at the jail just twice in seven months between his arrest and the trial. According to appellant's undisputed testimony, the first visit occurred approximately thirty days after Crow had been appointed to represent him and the second was three to four weeks before trial. Each visit lasted about ten minutes. Appellant testified that he spoke to Crow by telephone "about three times" for about five minutes each time. The record reflects that in the course of the approximately thirty-five minutes spent by Crow conferring with his client, appellant informed him that he was unable to read or write; he had given and signed statements regarding several offenses at the police department; and, that there were three individuals he thought would testify that he was elsewhere at the time the burglary allegedly occurred, his mother, his brother, and one James Odom.[2] The record further reflects that at some time prior to trial, the prosecutor provided Crow with a witness list and access to appellant's statement.[3] Appellant testified that Crow never asked him about the statement nor did he review it with him. Despite the overwhelming evidence that Crow knew of and had seen appellant's statement, he counseled appellant to turn down the State's proffered plea agreement because "he could beat the case because the D.A. didn't have any evidence."[4]

◼ Standing alone, the mere fact that Crow spent just thirty-five minutes with his client prior to trial does not necessarily establish inadequate preparation and thus ineffective assistance of counsel. *See United States v. Cronic,* 104 S.Ct. at 2049. The record does not show that Crow expended no further effort preparing for trial. In fact, it is shown that he met at least once with the prosecutor and either at that time or some other discussed a plea agreement. The record does show that Crow apparently spoke with at least some of the witnesses appellant sought to have testify. Although he did not contact the one unrelated alibi witness, the record is silent as to what efforts he expended in attempting to reach that individual. As such, this Court cannot assume he did not exercise due diligence in making that attempt. *See Moore v. State,* 700 S.W.2d at 206; *Rodriquez v. State,* 691 S.W.2d 77, 81 (Tex.App. —Houston [1st Dist.] 1985, no writ).

◼ Despite our inability to find counsel erred on those bases, there is significant evidence in the record of a total lack of action on Crow's part in regard to the statement purportedly given by appellant to the police. Knowledge of the statement alone would require that counsel at the very least discuss it with his client, particularly in light of its uncompromisingly incriminating nature. Under no standard of professional conduct can it be said that it was reasonable or competent for Crow to tell his client that the State had no evidence when in fact they had a signed statement from appellant admitting guilt.[5] In this respect, Crow's preparation was seriously deficient.

Appellant additionally claims that Crow's representation was ineffective in his failure to challenge the admissibility of the statement into evidence.[6] The evidence at the

---

2. Appellant provided this information under oath at the hearing on his motion for new trial. It was not disputed by the State, nor did the State object to the nature of the testimony.

3. The prosecutor also testified at the hearing on appellant's motion for new trial that Crow had been shown the statement.

4. Appellant's testimony at the hearing on his motion for new trial.

5. The Supreme Court has even suggested in dictum that failure to address the issues raised by a

confession eliminates the usual presumption of effectiveness of counsel, and raises a presumption of ineffectiveness because "circumstances [exist] that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 104 S.Ct. at 2047–2048 and n. 24 citing *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

6. The precise language of appellant is that Crow failed to bring any pre-trial motions. However, the argument in support of this asserted defi-

motion for new trial, discussed *supra,* was that Crow knew appellant was illiterate, and that Crow had seen the statement in the prosecutor's possession. Further, appellant testified that he told Crow it was not a statement he had given the police when the statement was introduced at trial.[7] The police officer witness at trial testified that after appellant gave the statement in question, it was given to appellant to read over and make corrections.[8] Despite the obvious questions of authenticity or voluntariness raised, Crow did not object to admission of the statement.

 "It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession.... Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness...." *Jackson v. Denno,* 378 U.S. 368, 376–377, 84 S.Ct. 1774, 1780–81, 12 L.Ed.2d 908 (1964). The procedure for challenging the voluntariness of a statement or confession is contained in Tex.Code Crim.Proc.Ann. art. 38.22, § 6 (Vernon 1985). Pursuant to *Jackson v. Denno* and article 38.22, a hearing on the voluntariness is to be held when the issue is raised.[9] *McNeill v. State,* 650 S.W.2d 405, 406 (Tex.

Cr.App.1983). If the issue is not timely raised, the court is not obligated to hold the hearing. A specific request for a hearing is not necessary; it is enough to invoke the court's duty to hold a hearing that an objection be made to the voluntariness of a confession. *McNeill v. State,* 650 S.W.2d at 407; *Page v. State,* 614 S.W.2d 819, 821 (Tex.Cr.App.1981). Failure to timely raise the issue of voluntariness waives the accused's constitutional right to a determination thereof and, further, precludes appellate review of the question. *Ross v. State,* 678 S.W.2d 491, 493 (Tex.Cr.App.1984); *Harris v. State,* 465 S.W.2d 175, 177 (Tex. Cr.App.1971).

 The record before the court demonstrates a total failure on the part of trial counsel to raise the issue of the voluntariness of Sanders' statement. The result was the waiver of appellant's constitutional and statutory rights. It is inconceivable that such an omission can be attributed to trial strategy.[10] "[A]bdication of a basic threshold responsibility ... is the antithesis of a considered strategy." *Ex parte Dunham,* 650 S.W.2d 825, 827 (Tex.Cr.App. 1983). In *Dunham,* trial counsel persuaded the accused to waive his right to a jury trial. The Court of Criminal Appeals found it "unthinkable that a reasonably effective trial attorney would, as a matter of tactics in any case, persuade his client to waive his constitutional right to a jury tri-

---

ciency centers on the overall failure to challenge the statement's admissibility.

7. Appellant does not deny that he gave statements to the police regarding any offenses. He merely denies having given the particular statement involved in this case. Appellant's uncontroverted testimony at the post-trial hearing is that the police read three statements back to him, but that the statement in question was not one of those three.

8. Contrary to the State's contention at the motion for new trial hearing that the "officer testified that he read the statement back to you and you had an opportunity to make any corrections you wanted to," the officer did not say he read the statement back to appellant.

9. The issue can be raised by pretrial motion, although the trial court may decline to hold a

hearing at that time and wait for counsel to object during trial. *Ross v. State,* 678 S.W.2d 491, 493 (Tex.Cr.App.1984).

10. The State contends that Crow's strategy was to undermine the voluntariness of the statement before the jury. In support of this position, it points to one question asked of the officer on cross-examination. The argument must fail, however, because even if that had been Crow's intent, it failed when he did not request a charge thereon. *See Burnworth v. State,* 698 S.W.2d 686, 690 (Tex.App.—Tyler 1985, pet. ref'd.). In any event, such strategy would not have been precluded had the proper steps been taken to have the Court make a preliminary determination. *See Harris v. State,* 465 S.W.2d 175, 177 (Tex.Cr.App.1971).

al, knowing that such a waiver was not in his client's best interests." *Id.*

The case at hand is, if anything, more egregious than *Dunham.* The undisputed evidence is that before trial counsel knew of written statements given to the police by his client, he was informed that his client could not read or write and yet he never discussed the statement with his client. Crow went so far as to tell his client to reject a plea agreement because the State had no evidence against him. Not a single objection was advanced to the statement, pretrial or during trial. The result was complete abandonment of his client's well-established constitutional and statutory rights to a reliable determination regarding the admissibility of the statement. Such failure to protect his client's rights cannot, by any stretch of the imagination, be seen as "trial strategy." Trial counsel's error was a monumental omission.

On the basis of counsel's failure to protect appellant's rights regarding the alleged confession alone, appellant's first ground should be sustained. However, the inadequacies of the representation do not stop there. The totality of the "representation" provided falls short of the benchmark of subjecting the prosecution's case to the "crucible of meaningful adversarial testing." *United States v. Cronic,* 104 S.Ct. at 2045. For example, counsel made no objections to any evidence presented by the State. While, in the abstract, failure to object to certain improper evidence may not necessarily be error, it did in this case permit the State to present whatever evidence it chose without regard to the substantive or procedural protections provided by law.[11]

Although counsel's omissions, apart from those regarding appellant's statement, indi-vidually might not support a claim of ineffective assistance of counsel, when considered as a whole, they are of sufficient gravity to call into question whether appellant received the fair trial to which he is entitled. The totality of the representation of appellant at trial was seriously deficient and prejudiced appellant's right to a fair trial. His first ground of error is sustained.

Appellant's second ground of error claims the trial court erred in applying the law to the facts in the guilt/innocence phase of the trial. In his argument under the ground, appellant contends that the charge authorized the jury to convict him on a theory not alleged in the indictment. We disagree.

The indictment, in pertinent part, charged that appellant "did then and there, with intent to commit theft, *personally* enter a building not then open to the public, without the effective consent of . . . the owner thereof; . . . ." (Emphasis in appellant's brief.) The court charged the jury, "If you find and believe from the evidence beyond a reasonable doubt that . . . the defendant . . . did then and then [sic] with intent to commit theft, enter a building not then open to the public, without the effective consent of . . . the owner thereof, . . . ." you will find him guilty of the offense of burglary. The court further instructed the jury that "the term 'enter' means to intrude any part of the body *or* any physical object connected with the body." (Emphasis in appellant's brief.) Appellant made no objection at trial to this part of the charge, and therefore is not entitled to a review of the ground unless the error, if any, prevented him from receiving a fair and impartial trial. *Alamanza v. State,* 686 S.W.2d 157 (Tex.Cr.App. 1984). We conclude that the word "personally"[12] used in the indictment is mere sur-

---

**11.** For example, testimony of the State's only witness who could in any way connect appellant to the subject offense was bolstered by improper hearsay evidence. The State was also permitted, at the punishment stage, to introduce without objection, evidence of misconduct for which appellant's probation was revoked.

**12.** Which is defined: "As oneself: on or for one's own part." Webster's Third New International Dictionary (1976).

plusage. Its presence in the indictment adds nothing to the allegations thereof, and its absence therefrom takes nothing away. To illustrate, the inquiry whether appellant or appellant "personally" entered [13] the building presents the identical issue to the jury. Hence no error is shown. Ground two is overruled.

By his third ground of error appellant complains of the verdict forms [14] submitted to the jury at the punishment phase. Appellant leveled no objection to the charge or the accompanying verdict forms at trial. Again, appellant is confronted with the "fundamental error" rule in *Alamanza.* The necessary application of *Alamanza* decimates his contentions under the ground even if error is presented that is "calculated to injure [his] ... rights." Hence no error is preserved for review because a review of the charge as a whole [15] reveals no error or at least no fundamental error. The court correctly instructed the jury in its charge on punishment, that should they find from the evidence beyond a reasonable doubt that appellant had been twice convicted of prior felonies as alleged in the indictment that "you will assess the punishment of confinement in the Texas Department of Corrections for a period of not less than twenty five [sic] years nor more than ninety nine [sic] years, or life." Three verdict forms were attached to the charge on punishment: the first expressed a finding that the allegations of the prior convictions were "not true," and recited "we assess his punishment at __ years confinement. ... and ... [a] fine of ____ (STATE AMOUNT OR 'NONE')"; the second expressed a finding that the allegation of the prior convictions were "true" and then recited "and we assess his punishment at __ years confinement....."; and the third verdict form draws appellant's fire under the ground. That form reads:

We the Jury, having found the Defendant guilty of Burglary of a Building, as charged in the Indictment, further find from the evidence beyond a reasonable doubt that he was, prior to the commission of the aforesaid offense of Burglary of a Building, was two times duly and legally convicted of a felony less than capital, as charged in the Indictment, and therefore, that the allegations with respect to said prior convictions, as alleged in the Indictment, are 'True', and we assess his punishment in the Texas Department of Corrections at life.

Appellant erroneously argues that the second verdict form "allows for [sic] the jury to take into consideration *the full range of punishment* provided by section 12.42(d)." (Emphasis added.) Such is not the case. Appellant cites us to no authority, and we are unaware of any authority which requires the alternative punishments provided for by section 12.42(d) to be embodied in *one* verdict form. The second and third forms permit the jury to assess the punishment at a term of years of not less than twenty-five years nor more than ninety-nine years *or* life confinement as they, in the exercise of their discretion, deemed appropriate. The third ground is overruled.

The judgment and conviction is reversed and the case is remanded for a new trial.

---

**13.** As defined in Tex.Penal Code Ann. § 30.-02(b)(1), (2) (Vernon 1974).

**14.** The indictment alleges two prior felony convictions for enhancement of punishment purposes pursuant to Tex.Penal Code Ann. § 12.-42(d) (Vernon Supp.1986) [hereafter referred to as section 12.42(d) ].

**15.** *See Robinson v. State,* 596 S.W.2d 130, 133 (Tex.Cr.App.1980); *White v. State,* 610 S.W.2d 504, 507 (Tex.Cr.App.1981).