ACCEPTED
01-14-00444-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
5/28/2015 9:29:01 PM
CHRISTOPHER PRINE
CLERK

### NO. 01-14-00444-CR

_____

**In the
Court of Appeals
For the
First District of Texas
At Houston**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

5/28/2015 9:29:01 PM

CHRISTOPHER A. PRINE
Clerk

_____

**On appeal from the 248th District Court of
Harris County, Texas
No. 1421756**

_____

**BLAKE ALAN COTTON,**
*Appellant*
**v.**
**THE STATE OF TEXAS,**
*Appellee*

---

### BRIEF FOR APPELLANT

---

Emily Detoto
State Bar No.:  00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone:  (713) 227-2244
Facsimile:  (713) 222-5840
emilydetoto@mac.com

Counsel for Appellant

**ORAL ARGUMENT REQUESTED**

# Identity of Parties and Counsel

### *Appellate Counsel for Appellant, Mr. Blake Alan Cotton*

Emily Detoto
State Bar No.: 00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone: (713) 227-2244
Facsimile: (713) 222-5840
emilydetoto@mac.com

Counsel for Appellant

### *Appellate Counsel for Appellee, The State of Texas*

Ms. Devon Anderson
District Attorney

Mr. Alan Curry, Assistant—Appeal

Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5800

### *Trial Counsel for Appellant, Mr. Blake Alan Cotton*

Mr. Randy Schaffer, Motion for New Trial
State Bar No.: 17724500
1301 McKinney, Suite 3100
Houston, Texas 77010
Telephone: (713) 951-9555

Jacqueline Gifford, Guilty Plea
State Bar No.: 12158550
1302 Waugh Drive
Houston, Texas 77019
Telephone: (713) 529-3825

***Trial Counsel for Appellee, The State of Texas***

Ms. Devon Anderson
District Attorney

Mr. Justin Keith Wood, Assistant—Motion for New Trial
State Bar No.: 24039247

Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone:  (713) 755-5800

# Table of Contents

**Page(s)**

Identity of Parties and Counsel…………………………………………………………ii

Index of Authorities……………………………………………………………………vi

Statement of the Case……………………………………………………………………1

Issue Presented…………………………………………………………………………..1

Statement of Facts………………………………………………………………………2

Summary of the Argument………………………..…………………………………..7

Argument………………………………………………………………………………...8

Issue Number One……………………………………………………………………....8

**MR. COTTON'S GUILTY PLEA WAS INVOLUNTARY BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THEREFORE, THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MR. COTTON'S MOTION FOR NEW TRIAL.**

A. Standard of Review……………………………….......................................8

B. An Involuntary Plea is Invalid…………………………………………………9

C. Ineffective Assistance of Counsel Standard..……………………………....10

D. Defense Counsel Failed to Recognize a Critical Legal Issue and did not Advise Mr. Cotton That a Motion to Suppress Should be Filed on his Behalf……………………………………………………..……….11

    a. Mr. Cotton was Detained, Thus the Fourth Amendment was Implicated……………………………………………………..14

    b. Officer Burnett did not Have Reasonable Suspicion to Lawfully Detain Mr. Cotton……………………………………………...17

c.  Mr. Cotton's Statements to Officer Burnett Were Fruits of the Illegal Detention and Should Have Been Suppressed, Thus Preventing the State From Proving its Case Against Mr. Cotton...21

d.  Mr. Cotton was Prejudiced and Would not Have Entered a Guilty Plea but for his Counsel's Deficient Performance………………...23

E.  Conclusion………………………………………………………….23

Prayer……………….…………..……..………………………....…24

Certificate of Service……………………………………..…………24

Certificate of Compliance……………………………………………25

# Index of Authorities

**Page(s)**

**Statutes**

Tex. Code Crim. Proc. Art. 38.23(a)……………………………….…21, 22

Tex. R. App. Proc. § 9.4……………………………………………..25

**Federal Cases**

*Brady v. United States,* 397 U.S. 742 (1970)……………………...…….9

*Rompilla v. Beard*, 545 U.S. 374 (2005)……………………….…...…10, 12

*Strickland v. Washington*, 466 U.S. 668 (1994)………………………..10, 11, 23

*Terry v. Ohio*, 392 U.S. 1 (1968)……………………….…………18

*United States v. Cronic*, 466 U.S. 648 (1984)………………….…...……..13

*United States v. Mendenhall,* 446 U.S. 544 (1980)……………………….16

*Wiggins v. Smith*, 539 U.S. 510 (2003)……………………….…...…..10, 12

*Williams v. Taylor*, 529 U.S. 362 (2000)……………………….……10

*Wong Sun v. United States*, 371 U.S. 471, 484 (1963)…………………….22

**Texas Court of Criminal Appeals**

*Bone v. State*, 77 S.W.3d 828 (Tex. Crim. App. 2002)………………………10

*Crain v. State*, 315 S.W.3d 43 (Tex. Crim. App. 2010)…………...16, 17, 18, 19

*Davis v. State,* 947 S.W.2d 240 (Tex. Crim. App. 1997)……………………..18

*Ex parte Aviles*, AP-75,616, 2007 WL 474968 (Tex. Crim. App. Feb. 14, 2007)…………………………………………………………….14

*Ex Parte Burns*, 601 S.W.2d 370 (Tex. Crim. App. 1980)(en banc)…………..9

*Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980),
*overruled on other grounds by Hernandez v. State*, 988 S.W.2d
770 (Tex. Crim. App. 1999)……………………………………..…….12

*Ex Parte Gallegos*, 511 S.W.2d 510 (Tex. Crim. App. 1974)……………..……13

*Ex parte Moody,* 991 S.W.2d 856 (Tex. Crim. App. 1999)………………..11, 23

*Ex Parte Moussazadeh*, 361 S.W.3d 684 (Tex. Crim. App. 2012)…………..….9

*Ex Parte Welch*, 981 S.W.2d 183 (Tex. Crim. App. 1998)……………..…..11

*Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005)…………..…………17, 18

*Riley v. State*, 378 S.W.3d 453 (Tex. Crim. App. 2012)…………….…..………9

*State v. Elias*, 339 S.W.3d 667 (Tex. Crim. App. 2011)……………..…………17

*State v. Woodard*, 341 S.W.3d 404 (Tex. Crim. App. 2011)………………15, 16

*Thornton v. State*, 145 S.W.3d 228 (Tex. Crim. App. 2004)…………………22

**Texas Intermediate Appellate Courts**

*Acosta v. State*, 411 S.W.3d 76 (Tex. App.—Houston [1st Dist.]
 2013, no pet.)……………………………………………………………9

*Booth v. State*, 725 S.W.2d 521 (Tex. App.—Tyler 1987, pet. ref'd)………….13

*Brock v. State*, 14-06-00128-CR, 2007 WL 2367262 (Tex.
App.—Houston [14th Dist.] Aug. 21, 2007, pet. ref'd)…………..………….15

*Castellano v. State*, 49 S.W.3d 566 (Tex. App.—Corpus Christi
2001, pet. ref'd)……………………………………………..……..20

*Gamble v.* State, 8 S.W.3d 452 (Tex. App—Houston [1st Dist.]
1999, no pet.)…..………………………………………………….19

*Labib v. State*, 239 S.W.3d 322 (Tex. App.—Houston [1st Dist.] 2007, no pet.)……………………………………………………………………11, 23

*Lopez v. State*, 428 S.W.3d 271 (Tex. App.—Houston [1st Dist.] 2014), *pet. ref'd* (June 11, 2014)………………………………………8, 9, 10

*Lopez v. State*, 01-13-01079-CR, 2015 WL 832059 (Tex. App.—Houston [1st Dist.] Feb. 26, 2015, no. pet. h.)…………………………13

*Ochoa v. State*, 717 S.W.2d 174 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd)……………………………………………………..20

*Odelugo v. State*, 01-12-00521-CR, 2015 WL 1062560 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, no. pet. h.)………………….....…23

*Pope v. State*, 695 S.W.2d 341 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd)……………………………………………………22

*Sanders v. State*, 715 S.W.2d 771 (Tex. App.—Tyler 1986, no pet.)……..……13

*Sanders v. State*, 992 S.W.2d 742 (Tex. App.—Amarillo 1999, no pet.)……...21

*St. George v. State*, 197 S.W.3d 806 (Tex. App.—Fort Worth 2006) *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007)…………………..……….22

*Starz v. State*, 309 S.W.3d 110 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)………………………………………………..……..13

## Other

ABA Standards For Criminal Justice, The Defense Function, Part III, Standard 4-3.3(c)(v)…………………………………………...12

ABA Standards For Criminal Justice, The Defense Function, Part III, Standard 4-3.7(f)…………………………………………12

## Statement of the Case

Appellant, Blake Alan Cotton, was charged by complaint with the felony offense of burglary of a building on March 20, 2014. (CR at 21)[1]. Mr. Cotton entered a guilty plea with a punishment agreement for six months in a state jail facility, which the trial court accepted and assessed on March 25, 2014. (SE3[2], RR at 202-09). Mr. Cotton filed a Motion for New Trial on April 16, 2014, alleging an involuntary plea of guilty. (CR at 4-16). A hearing on the Motion for New Trial was conducted on May 19, 2014. (RR at 1). The trial court denied the motion on May 28, 2014. (CR at 13, 22). Mr. Cotton timely filed a Notice of Appeal on May 28, 2014, and the trial court certified Mr. Cotton's right to appeal the denial of the Motion for New trial on May 28, 2014. (CR at 16-17, 22). Mr. Cotton's brief is due on Thursday, May 28, 2015.

## Issue Presented

1. MR. COTTON'S GUILTY PLEA WAS INVOLUNTARY BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THEREFORE, THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MR. COTTON'S MOTION FOR NEW TRIAL.

---

[1] CR refers to Clerk's Record; RR refers to Reporter's Record.
[2] SE refers to State's Exhibit; DE refers to Defendant's Exhibit.

## Statement of Facts

Mr. Cotton was charged with burglary of a building on March 20, 2014. (CR at 21). Five days later and while in custody, Mr. Cotton met his appointed defense lawyer, Ms. Jacqueline Gifford, at his first court setting. (RR at 65-66, 73, 139-40). At the time, Mr. Cotton was 19 years old and currently serving a deferred adjudication probation for burglary of a building in Galveston County. (RR at 67-68, 138). Within two hours of Ms. Gifford's arrival in the courtroom, Mr. Cotton pleaded guilty to burglary of a building and received a six-month state jail sentence. (RR at 79). Ms. Gifford reviewed the offense report and saw no legal issues or defenses. (RR at 73-74). Mr. Cotton's father had told Ms. Gifford he would be in court; unfortunately, he was stuck in the security line to the building and made it to the courtroom after the plea had already occurred. (RR at 76, 79-81).

Mr. Cotton filed a Motion for New Trial on April 16, 2014, alleging an involuntary plea of guilty. (CR at 4-16). A hearing on the Motion for New Trial was conducted on May 19, 2014. (RR at 1).

### The Detention of Mr. Cotton

Officer Chad Burnett was dispatched to 1410 Beech Cove, La Porte, Texas around 12:46 a.m. on March 20, 2014. (RR at 8; DE1, RR at 185). Officer Burnett met with the caller, Ms. Mongiello, who thought she saw a man

in her backyard. (RR at 9). There was no other description beyond that. *Id.* There was no description of a vehicle being involved. (RR at 10). Officer Burnett saw some tools stacked up behind a different house, 1409 South 8th Street, so he knocked on the door and no one answered. (RR at 11-13). He did not know if the owner or someone with his consent had left the tools out, or if they even came from the owner's backyard. (RR at 12-13). Officer Burnett then saw a truck pull into the driveway at 1422 Beech Cove, which is approximately three to four houses away from the initial caller's house. (RR at 13; DE3, RR at 192; DE4, RR at 194; DE5, RR at 196; SE1, RR at 200). Mr. Cotton got out of the truck and Officer Burnett asked if he lived there. (RR at 16). Mr. Cotton said, "No," and turned and walked away. *Id.* Officer Burnett was in uniform and he had a gun and night stick that were "visible." (RR at 18). He told Mr. Cotton to stop, but Mr. Cotton kept walking so he told him to stop a second time. (RR at 17). Mr. Cotton then stopped and turned around. (RR at 18). Officer Burnett testified to the following regarding the stop:

> Q. And did he have the right to ignore you and continue to walk away from you—from you?
>
> A. I would say no because I was—I—then, once he advised he does not live there, raised my suspicions. And I was then questioning him.

(RR at 17).

3

Officer Burnett then claimed that this was not a detention while acknowledging that he intended for Mr. Cotton to stop and speak with him:

Q. Did you intend for him to take it as an order?

A. No—I mean, yes.  Yes, I did.

Q. No or yes?  Which is it?

A. Yes.

Q. All right.  So, you intended for him to take it as an order; and he did take it as an order, correct?

A. I intended for him to come talk to me.

Q. You intended for him to stop and talk to you?

A. Correct.

(RR at 20-21).

Officer Burnett did not advise Mr. Cotton of his rights before he started questioning him about anything.  (RR at 23).  Mr. Cotton advised that he knew Ms. Mongiello and was going to her house.  (RR at 23).  Officer Burnett then left Mr. Cotton with another officer because he was not free to leave, in order to ask Ms. Mongiello if she knew Mr. Cotton.  (RR at 23-24).  Officer Burnett spoke with Ms. Mongiello, who advised that she knew Mr. Cotton but he was not coming over.  (RR at 24-26).  Officer Burnett then spoke with the homeowner at 1409 South 8th Street, Andrew Pavelko, who told him the tools

were his and he did not give anyone permission to remove them. (RR at 26-27). Upon further questioning, Mr. Cotton then admitted to Officer Burnett that he had taken the tools out of the shed. (RR at 27). Mr. Cotton later made the same admission on video in Officer Burnett's patrol car. (RR at 28). On cross-examination, Officer Burnett told the prosecutor that this was a residential neighborhood and there was not any other traffic near 1410 Beech Cove at that time of night. (RR at 34). On re-direct, Officer Burnett acknowledged that Mr. Cotton's confessions were made as a result of the initial detention. (RR at 45-46).

During argument at the Motion for New Trial hearing, the prosecutor agreed that a detention had occurred. (RR at 170).

### Ms. Gifford's Testimony

The majority of Ms. Gifford's practice is criminal court appointments, averaging about 400 cases per year. (RR at 49, 52). Ms. Gifford had not participated in a suppression hearing in the previous five years, and her last felony trial as a first chair was four years earlier. (RR at 51-53). On March 25, 2014, Ms. Gifford read the offense report in Mr. Cotton's case for the first time. (RR at 65-66). She learned that he was on probation for burglary of a building in Galveston County, but did not check anything other than the state's file. (RR at 68, 70). Ms. Gifford did not believe that Mr. Cotton had any legal defenses to

the charge, including any basis to exclude his oral statements. (RR at 73-74, 100). She did not advise Mr. Cotton that he could file a motion to suppress his oral statements. (RR at 100). Ms. Gifford testified that she told Mr. Cotton the state was offering six months in state jail, but that he should reset the case until the pending Galveston case was resolved. (RR at 78-79). She also testified that Mr. Cotton was insistent on resolving the case that day, and that she did not call Galveston County before the plea. (RR at 79, 81-84).

Ms. Gifford testified that she believed Officer Burnett had reasonable suspicion for the detention of Mr. Cotton and that the state provided her with a case for the hearing and said, "Read Sanders because we're going to use it." (RR at 110, 120-21). Ms. Gifford also testified to her understanding of the law:

Q. Tell me: Can a police officer legally approach a citizen and ask questions?

A. It depends on the circumstances.

Q. Under what circumstances could a police officer not do that?

A. Where there wasn't a suspicious circumstance, where he wasn't just called out for a possible burglary.

Q. So, you're saying an officer can't just walk up to somebody and start asking questions for no reason at all?

A. I don't believe he can unless -- well, if the person wants to answer them, yes.

Q. Do you know what that's called from a legal standpoint?

A. No.

Q. You heard of a "consensual encounter"?

A. Oh, "consensual encounter", yes.

(RR at 86-87).

### Mr. Cotton's Testimony

Mr. Cotton testified that when Officer Burnett told him to stop he thought he had to comply. (RR at 138-39). Mr. Cotton also testified that he did not tell Ms. Gifford that he was in a hurry to resolve the case, and she did not advise him of any legal defenses. (RR at 141-43). Mr. Cotton did not know that he could file a Motion to Suppress and if he had known, he would have advised Ms. Gifford to file one instead of the guilty plea. (RR at 145-46; CR at 15).

The trial court denied the Motion for New Trial and did not issue findings on the record. (CR at 16-17, 22).

### **Summary of the Argument**

Mr. Cotton was illegally detained by Officer Burnett, who did not have reasonable suspicion for the detention, but was instead acting on a hunch in violation of the Fourth Amendment. As a result of the illegal detention, Mr.

Cotton gave a statement where he admitted to committing the offense of burglary of a building. But for this statement, the state would have been unable to prove its case against Mr. Cotton.

While Mr. Cotton was in custody, he met his appointed lawyer, Ms. Gifford, at his initial court appearance and pleaded guilty to the offense within a two-hour period of her arrival in the courtroom. Mr. Cotton was not advised that he could file a Motion to Suppress his statements, and Ms. Gifford did not recognize any legal defenses in his case. Ms. Gifford failed to provide effective assistance of counsel, thereby rendering Mr. Cotton's plea of guilty involuntary. Mr. Cotton would have filed a Motion to Suppress had he been properly advised.

A Motion for New Trial based on an involuntary plea as a result of ineffective assistance of counsel was erroneously denied.

## Argument

**ISSUE I: MR. COTTON'S GUILTY PLEA WAS INVOLUNTARY BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, THEREFORE, THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MR. COTTON'S MOTION FOR NEW TRIAL.**

### A. Standard of Review.

This Court reviews a denial of a motion for new trial under an abuse of discretion standard. *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston

[1st Dist.] 2014), *pet. ref'd* (June 11, 2014); *Acosta v. State*, 411 S.W.3d 76, 89 (Tex. App.—Houston [1st Dist.] 2013, no pet.).  This standard provides great deference to the trial court, "reversing only if the trial judge's decision was clearly erroneous and arbitrary." *Lopez*, 428 S.W.3d at 278(citing *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012)).

> An 'appellate court must not substitute its own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement.'  As to determinations of fact, we must view the evidence in the light most favorable to the prior ruling: a trial court abuses its discretion only if no reasonable view of the evidence could support its holding.

*Lopez*, 428 S.W.3d at 278(quoting *Riley*, 378 S.W.3d at 457–58.).

## B.  An Involuntary Plea is Invalid.

It is well settled law that a guilty plea must be freely, knowingly, and voluntarily made.  *Brady v. United States,* 397 U.S. 742, 748 (1970).  A guilty plea made as a result of ineffective assistance of counsel is not knowingly and voluntarily entered. *Ex Parte Moussazadeh*, 361 S.W.3d 684, 688-89 (Tex. Crim. App. 2012); *Ex Parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980)(en banc); *Lopez*, 428 S.W.3d at 278.

## C. <u>Ineffective Assistance of Counsel Standard.</u>

The *Strickland*[3] test has two well-known components:

> 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'

*Williams v. Taylor*, 529 U.S. 362, 390 (2000)(quoting *Strickland*, 466 U.S. at 687). Ineffectiveness is established by a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms." *Lopez*, 428 S.W.3d at 277(citing Strickland, 466 U.S. at 688.). It is well-established that the Supreme Court looks to the ABA Standards for Criminal Justice for guidance on the reasonableness of counsel's actions. *Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003). The burden is on the accused to show "by a preponderance of the evidence that his attorney failed to provide reasonably effective assistance." *Lopez*, 428 S.W.3d at 277(citing *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002)). The prejudice prong is

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1994).

established by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

> In the context of a claim that the defendant's plea is involuntary due to ineffective assistance of counsel, the defendant must show (1) that counsel's advice was outside the range of competency demanded of attorneys in criminal cases and (2) that, but for counsel's erroneous advice, the defendant would not have pleaded guilty and would instead have gone to trial.

*Labib v. State*, 239 S.W.3d 322, 333 (Tex. App.—Houston [1st Dist.] 2007, no pet.)(citing *Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999)). The Court of Criminal appeals has held: "In assessing competence, we have held counsel accountable for knowledge, or the ability to attain knowledge of relevant legal matters that are neither novel nor unsettled." *Moody*, 991 S.W.2d at 858(citing *Ex Parte Welch*, 981 S.W.2d 183 (Tex. Crim. App. 1998)).

D. **Defense Counsel Failed to Recognize a Critical Legal Issue and did not Advise Mr. Cotton That a Motion to Suppress Should be Filed on his Behalf.**

It is well-established that the Supreme Court looks to the ABA Standards for Criminal Justice for guidance on the reasonableness of counsel's actions.

*Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 522 (2003). The ABA standards provide:

> (f) For each matter, defense counsel should consider what procedural and investigative steps to take and <u>motions to file</u>, and not simply follow rote procedures learned from prior matters.

ABA Standards For Criminal Justice, The Defense Function, Part III, Standard 4-3.7(f)(emphasis added).

> (c) As early as practicable in the representation, defense counsel should also discuss:
>
> …
>
> (v) likely legal options such as <u>motions</u>, trial, and potential negotiated dispositions.

ABA Standards For Criminal Justice, The Defense Function, Part III, Standard 4-3.3(c)(v)(emphasis added).

"A criminal defense lawyer must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance to his client-in or out of the courtroom." *Ex parte Duffy*, 607 S.W.2d 507, 516-17 (Tex. Crim. App. 1980), *overruled on other grounds by Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999)(citations omitted).

> An "attorney who represents a criminal defendant is 'bound by professional duty to present all available evidence and arguments in support of (the client's) positions and to contest with vigor all adverse

> evidence and views.' " *Thomas v. State,* 550 S.W.2d
> 64, 68 (Tex. Crim. App. 1977) (quoting *Gagnon v.
> Scarpelli,* 411 U.S. 778, 787 (1973); *Wenzy v. State,*
> 855 S.W.2d 47, 50 (Tex.App.–Houston [14th Dist.]
> 1993, pet. ref'd)).

*Lopez v. State*, 01-13-01079-CR, 2015 WL 832059, at *4 (Tex. App.—Houston [1st Dist.] Feb. 26, 2015, no. pet. h.) "A defendant is entitled to rely on counsel to make an independent investigation of the facts, circumstances, pleadings and laws involved, and then to offer his informed opinion as to what plea the defendant should enter." *Starz v. State*, 309 S.W.3d 110, 119 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)(citation omitted).

Defense counsel's failure to raise the issue of voluntariness of his client's statement which should have been inadmissible was a "monumental omission," and "[t]he totality of the 'representation' provided f[ell] short of the benchmark of subjecting the prosecution's case to the 'crucible meaningful adversarial testing.'" *Sanders v. State*, 715 S.W.2d 771, 775-76 (Tex. App.—Tyler 1986, no pet.)(quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)). Counsel has been found ineffective in a guilty plea case for failing to inform an accused person how the facts of his case "related to the law of murder and voluntary manslaughter, and the State's burden of proof thereon." *Booth v. State*, 725 S.W.2d 521, 524 (Tex. App.—Tyler 1987, pet. ref'd). In *Booth*, the court relied on *Ex Parte Gallegos*, 511 S.W.2d 510, 511 (Tex. Crim. App. 1974), which held

13

that Mr. Gallegos was denied effective assistance of counsel "because of the failure of his trial counsel to advise him of the relationship of the facts in his case to the Texas law of robbery" thus, rending his guilty plea involuntary. In *Aviles*, the Court of Criminal Appeals held that, "Based on the record, counsel's failure to investigate the circumstances of Applicant's arrest and confession and to file a motion to suppress constituted deficient performance." *Ex parte Aviles*, AP-75,616, 2007 WL 474968, at *1 (Tex. Crim. App. Feb. 14, 2007).

In the case at bar, defense counsel failed to explore let alone recognize the need to file a motion to suppress Mr. Cotton's statements based on the illegal detention. Defense counsel's one brief visit with Mr. Cotton in the holdover cell before his guilty plea did not satisfy the standards expected of criminal defense lawyers, especially in light of her failure to file a critical motion. Her failure to advise Mr. Cotton of the relationship of the facts in his case to the law on detentions and the admission of confessions rendered Mr. Cotton's plea involuntary.

a. **Mr. Cotton was Detained, Thus the Fourth Amendment was Implicated.**

The Fourth Amendment is only implicated when an investigative detention or arrest has occurred; a consensual encounter provides no Fourth

Amendment protection. A consensual encounter occurs when a police officer approaches and talks to or questions a citizen, and the citizen has the right to terminate the conversation and walk away. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). "No bright-line rule governs when a consensual encounter becomes a seizure. Generally, however, when an officer through force or a showing of authority restrains a citizen's liberty, the encounter is no longer consensual." *Id.*

> A seizure or detention occurs if, in light of all the circumstances surrounding an encounter between a police officer and an individual, the officer's conduct would communicate to a reasonable person that he is not free to go, or not free to refuse the officer's requests. *Reyes v. State,* 899 S.W.2d 319, 323 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd). A person is seized if, from his or her perspective, there has been such a display of official authority that a reasonable person would not have felt that he was free to leave. *Shelby v. State,* 888 S.W.2d 231, 233 (Tex.App.-Houston [1st Dist.] 1994 pet. ref'd). However, a person has not been seized until he has yielded to a law enforcement officer's show of authority or when officers physically limit his movement. *Johnson v. State,* 912 S.W.2d 227, 234 (Tex.Crim.App.1995).

*Brock v. State*, 14-06-00128-CR, 2007 WL 2367262, at *2 (Tex. App.— Houston [14th Dist.] Aug. 21, 2007, pet. ref'd). The Court of Criminal Appeals has held that an example of a seizure is "the <u>use of language or tone of voice</u> indicating that compliance with the officer's request might be compelled."

*Crain v. State*, 315 S.W.3d 43, 49-50 (Tex. Crim. App. 2010)(citing *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)). Moreover, the Court of Criminal Appeals has held that "[t]he surrounding circumstances, including time and place, are taken into account, but the officer's conduct is the most important factor when deciding whether an interaction was consensual or a Fourth Amendment seizure." *Woodard*, 341 S.W.3d at 411(emphasis added).

In *Crain*, the Court of Criminal Appeals held that a detention had occurred when the officer shined his overhead lights in the accused's direction and told him to 'come over here and talk to me,' in a "request-that-sounded-like-an-order." *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). The Court held the detention was illegal and the subsequent result of the search must be suppressed. *Id.* at 53.

Officer Burnett intended to question Mr. Cotton and acknowledged on several occasions that it was a detention. *See* Facts, *supra* at 3-5. Mr. Cotton believed that he was not free to leave and the prosecutor agreed it was a detention. It appears from the record that Ms. Gifford did not adequately understand the difference between a consensual encounter with police and a detention; therefore, she could not possibly render effective assistance of counsel because she did not understand the law and how it applied to the facts of

Mr. Cotton's case. *See* Facts, *supra* at 5-7. Assuming *arguendo*, that she did adequately understand the law, she failed to properly advise Mr. Cotton.

### b. **Officer Burnett did not Have Reasonable Suspicion to Lawfully Detain Mr. Cotton.**

> A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. This standard is an objective one that disregards the actual subjective intent or motive of the detaining officer and looks, instead, to whether there was an objective justification for the detention.

*State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011)(internal citations omitted).

Reasonable suspicion is determined based on the totality of the circumstances, and this Court determines reasonableness *de novo*.[4] *Crain*, 315 S.W.3d at 48-49, 53. Opinions of the officer are "ineffective substitutes for specific, articulable facts in a reasonable-suspicion analysis." *Ford v. State*, 158 S.W.3d 488, 493-94 (Tex. Crim. App. 2005). "In deciding whether reasonable suspicion existed, we look at the facts available to the officer at the time of the

---

[4] While this appeal is not based on the denial of a motion to suppress evidence, this Court's determination of reasonable suspicion to detain Mr. Cotton is critical to the determination of whether defense counsel provided ineffective assistance of counsel by failing to even attempt to have the statement obtained as a result of the detention suppressed.

detention." *Crain*, 315 S.W.3d at 52-53(citing *Davis v. State,* 947 S.W.2d 240, 243 (Tex. Crim. App. 1997)). Also, an officer's training and experience is insufficient to establish reasonable suspicion; it requires objective factual support. *Ford*, 158 S.W.3d at 494.

The Supreme Court has emphasized the importance of this standard for more than 40 years:

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. And simple good faith on the part of the arresting officer is not enough. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be secure in their persons, houses, papers and effects, only in the discretion of the police.

*Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)(internal quotations and citations omitted).

The Court of Criminal Appeals has also emphasized that the time of day and the level of criminal activity in the area are only factors that do not prove a "suspect is engaged in any sort of criminal offenses. In order for these facts to affect the assessment of the suspect's actions, the surroundings must raise a suspicion that the particular person is engaged in illegal behavior." *Crain*, 315 S.W.3d at 53. This Court has found insufficient reasonable suspicion to justify a detention with the following factors:

> (1) the area had a history of drug sales; (2) the police had had frequent calls to the area or the residence over the last year; (3) it was 3:00 a.m.; (4) appellant was either standing in the street near, or walking in the street toward, a residence to which the officers had been called in past, but at which they had never made arrests for drugs or weapons; and (5) appellant watched the marked police car and walked away from it when it turned around.

*Gamble v.* State, 8 S.W.3d 452, 453-454 (Tex. App—Houston [1st Dist.] 1999, no pet.).

Officer Burnett had no description of a suspect, other than a man, and he had no reason to believe a vehicle was involved. Yet, he stopped and detained Mr. Cotton immediately, several house down from the actual dispatched scene, where he was simply getting out of his truck. He had no objective, specific, articulable facts that Mr. Cotton had engaged in criminal activity. The time of day was not enough to meet the demands of the Fourth Amendment. Officer

19

Burnett was acting on a hunch; this was unreasonable.

In the case at bar, the State relied on three cases during the Motion for New Trial hearing. All three cases are clearly distinguishable. In *Castellano*, the accused did not dispute that his headlamp was not functioning at the time of his traffic stop, which provided reasonable suspicion for the detention. Moreover, the accused provided consent to search. *Castellano v. State*, 49 S.W.3d 566, 575-76 (Tex. App.—Corpus Christi 2001, pet. ref'd). Therefore, a motion to suppress would not have been properly granted. *Id.* In *Ochoa*, the accused committed a felony within the officer's view and "none of the evidence introduced at trial was the product of that arrest." *Ochoa v. State*, 717 S.W.2d 174, 175 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd). Similarly, had trial counsel filed a motion to suppress, it would not have been properly granted. *Id.* In *Sanders*, Officer Lavigne provided 11 specific articulable factors to justify the detention of Mr. Sanders:

> (1) Lavigne received and responded to the dispatch call shortly before midnight, a time of day when according to his prior experiences there was "very, very little" traffic in the Wolflin area; (2) the dispatch call reported an attempted burglary in an area that had been the scene of multiple recent burglaries; (3) two suspects were reportedly involved in the attempted burglary; (4) the persons attempting the burglary had departed in a northerly direction; (5) Lavigne believed that burglars often parked a getaway car a short

distance from the residence or building to be broken into, and proceeded to their parked car on foot after the crime; (6) Lavigne encountered appellant's vehicle no more than two to three minutes after receiving the dispatch call for the attempted burglary; (7) he observed no other cars in the area before (or after) he encountered appellant's vehicle; (8) appellant's vehicle contained two persons, the same number as had been reportedly involved in the crime; (9) appellant's vehicle was heading away from the address where the crime had occurred; (10) appellant's vehicle was headed in the same direction that the burglary suspects fled on foot from the scene of the burglary attempt; and (11) appellant's vehicle was only three to four blocks driving distance (approximately two blocks straight-line distance) from the scene of the burglary when Lavigne stopped the vehicle.

*Sanders v. State*, 992 S.W.2d 742, 748-50 (Tex. App.—Amarillo 1999, no pet.).

In the case at bar, the officer did not have a description of a suspect, a direction of departure, a description of a car, to the contrary, there was no report that a vehicle was involved.

    **c.** **Mr. Cotton's Statements to Officer Burnett Were Fruits of the Illegal Detention and Should Have Been Suppressed, Thus Preventing the State From Proving its Case Against Mr. Cotton.**

Article 38.23(a) of the Texas Code of Criminal Procedure provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws

of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

"The federal exclusionary rule and article 38.23 extend not only to evidence obtained as a direct result of an illegal arrest, search, or seizure, but also to evidence obtained as an indirect result of an illegal arrest, search, or seizure, known as the 'fruit of the poisonous tree.'" *St. George v. State*, 197 S.W.3d 806, 824 (Tex. App.—Fort Worth 2006) *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007); *see Wong Sun v. United States*, 371 U.S. 471, 484, 488 (1963); *Thornton v. State*, 145 S.W.3d 228, 232 (Tex. Crim. App. 2004). "In view of our holding that the detention was not a lawful exercise of police power, we also hold that the appellant's subsequent oral admission and the fruits of the automobile search were inadmissible." *Pope v. State*, 695 S.W.2d 341, 344 (Tex. App.—Houston [1st Dist.] 1985, pet. ref'd)(citations omitted).

If defense counsel had filed a motion to suppress based on the illegal detention of Mr. Cotton, his statements would not have been admissible, which effectively gutted the state's case against him. Defense counsel did not even recognize the issue, nor did she inform Mr. Cotton that a Motion to Suppress could have been filed.

### d. **Mr. Cotton was Prejudiced and Would not Have Entered a Guilty Plea but for his Counsel's Deficient Performance.**

To show prejudice under *Strickland*, an accused must present evidence that "but for his trial counsel's deficient performance, he would not have pleaded guilty, but instead would have insisted on proceeding to trial." *Odelugo v. State*, 01-12-00521-CR, 2015 WL 1062560, at *5 (Tex. App.—Houston [1st Dist.] Mar. 10, 2015, no. pet. h.); *See Labib v. State*, 239 S.W.3d 322, 333 (Tex. App.—Houston [1st Dist.] 2007, no pet.)(citing *Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex. Crim. App. 1999)).

Mr. Cotton testified that had he known that a Motion to Suppress could have been filed and had he been properly advised of the law, he would have filed said motion instead of pleading guilty at his first court appearance.

### E. **Conclusion.**

Mr. Cotton was denied constitutionally mandated effective assistance of counsel, therefore, his plea of guilty was involuntary. This Honorable Court should reverse the denial of the Motion for New Trial, reverse the judgment of conviction, vacate the sentence, and remand for a new trial.

## Prayer

For the reasons above, Appellant respectfully prays this Court of Appeals reverse the denial of the Motion for New Trial, reverse the judgment of conviction and sentence, and remand this case back to the trial court for a new trial.

Respectfully submitted,

___/s/ Emily Detoto_____
EMILY DETOTO
State Bar No.:  00797876
917 Franklin, 4th Floor
Houston, Texas 77002
Telephone:  (713) 227-2244
Facsimile:  (713) 222-5840
emilydetoto@mac.com

Counsel for Appellant

## Certificate of Service

I hereby certify that a true and correct copy of the Brief for Appellant was electronically delivered to Mr. Alan Curry, Appellate Division Chief, Harris County District Attorney's Office, on this 28th day of May 2015.

_____/s/ Emily Detoto_____
EMILY DETOTO

## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, that the instant brief is computer generated using Microsoft Word for Mac and said computer program has identified that there are 5,508 words within the portions of this brief required to be counted by Rule 9.4(i)(1)&(2) of the Texas Rules of Appellate Procedure. The document was prepared in proportionately spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.


_____/s/ Emily Detoto_____
EMILY DETOTO